**RIDDER BROS., INC., v. BLETHEN et al.**

No. 10504.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1944.

Jones & Bronson, H. B. Jones, and Story Birdseye, all of Seattle, Wash., and Oppenheimer, Hodgson, Brown, Donelly & Baer, William H. Oppenheimer, and Montreville J. Brown, all of St. Paul, Minn.

(Myles B. Amend, of New York City, N. Y., of counsel), for appellant.

McMicken, Rupp & Schweppe, Otto B. Rupp, J. Gordon Gose, Holman, Sprague & Allen, Hulbert, Helsell & Paul, and Charles H. Paul, all of Seattle, Wash., for appellees.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of dismissal of a bill of complaint theretofore filed in the district court in which the specific performance of a contract is prayed. The case was brought in the federal court under allegations that diversity of citizenship of parties exists 28 U.S.C.A. § 41(1) (b)], and that the value of amount involved in suit exceeds the jurisdictional minimum of more than $3,000 exclusive of interest and costs [28 U.S.C.A. § 41(1)]. The case was dismissed solely upon the ground that the bill does not disclose the value in suit to be within such jurisdictional minimum.

Under date of December 30, 1929, C. B. Blethen, as party of the first part, Genevieve Blethen, Rose A. Blethen, Florence B. Duffy and Marian B. Mesdag, as parties of the second part, and Bernard H. Ridder, Joseph E. Ridder and Victor F. Ridder, doing business as Ridder Brothers, copartners, as parties of the third part, entered into a contract under the terms of which the parties of the third part, hereinafter sometimes called the Ridders or Ridder Brothers, invested over one and one-half million dollars in a newly organized corporation to which the properties of the long-established newspaper known as the Seattle Times were assigned. On the 4th day of January, 1930, and on the 1st day of February, 1930, this contract was amended and modified. On the date of the original contract C. B. Blethen and the Ridders, as co-partners designated Ridder Brothers, entered into a contract which was termed Supplemental Contract. The supplemental contract was amended and modified under the dates of January 15th, February 1st and June 30th, 1930. C. B. Blethen had long been the publisher of the Times, and he became one of the principal owners of stock in the new corporation. Either directly through such ownership of stock or through ownership of stock in a subsequently organized corporation, to which he assigned newspaper corporation stock, Mr. Blethen continued, until his death, a principal owner in the enterprise and active in the business conduct and publication of the newspaper.

Through and by the terms of the contractual relationship resulting from the agreements above referred to certain restrictions on the hypothecation, sale, and ownership of the voting stock in the newspaper corporation were agreed upon for a period of twenty-one years from the date of the original contract so that the power of control of this large enterprise was provided for, together with details of management, in a manner agreeable to the parties to the contract. This contractual relationship provided that Ridder Brothers should have certain rights and perform certain duties toward the management of the newspaper and that they were to receive $25,000 per annum therefor for a period of five years from January 30, 1929, and were to refrain from possessing any interest in any other newspaper or general publishing business in the State of Washington without Blethen's consent. The contractual relationship also provided that C. B. Blethen should become president of the new corporation and manager and publisher of the Times for a period of five years from the date of the contract at a salary of $114,000 per annum.

Realizing that the agreed-to plans and agreements could well be disrupted in case of the death of Mr. Blethen, it was stipulated in the supplemental agreement that Blethen should provide by will that immediately upon his death his voting stock and his interest in any corporation holding the said new corporation voting stock should be taken and held in trust for twenty-one years from and after December 30, 1929, and at the end of the trust period the trustees should distribute the stock to Blethen's surviving sons and the issue of them as might then be deceased in equal shares per stirpes. The supplemental contract further directs the inclusion in the trust agreement of a provision that upon any difference arising among the trustees, the issue should be submitted to the then general manager of The Associated Press for final decision. It is also specified therein that the trustees should be Rae Kingsley Blethen (wife of C. B. Blethen), Bernard H. Ridder and Elmer E. Todd or their successors. The supplemental contract outlined a like procedure should Mr. Blethen become incapacitated.

The contractual agreements are long and detailed, and the short reference to their terms which we have just made will be sufficient for the purposes of this appeal. These agreements are designated as exhibits, attached to the complaint and made parts thereof. They include balance sheets of the business showing a large, prosperous and profitable going concern. The contracts and agreements went into effect; in due time Mr. Blethen submitted the form of a will, and the Ridders approved it as conforming satisfactorily with the requirements therefor in the supplemental contract.

Thereafter and on the 30th day of October, 1941, Mr. Blethen died testate, at which time the Class B common stock of the corporation, which stock alone was voting stock, was held as follows:

| | | |
|---|---|---|
| C. B. Blethen | 39 | shares |
| The Blethen Corporation | 455 | " |
| Rae Kingsley Blethen | 1 | " |
| Elmer E. Todd | 10 | " |
| Ridder Brothers | 495 | " |

Following the death of Mr. Blethen a will was offered in, and was admitted to probate by, the courts of the State of Washington, but it did not conform in all respects to the form of the will submitted to Ridder Brothers and approved by them. In this probated will the decedent had omitted to include the provision that Blethen's voting stock of the newly organized newspaper corporation, including his interest in the holding company, should be voted at all times after Blethen's death by designated trustees, to-wit: Rae Kingsley Blethen, Joseph E. Ridder (substituted by agreement instead of Bernard H. Ridder), Elmer E. Todd or their successors. Instead, it was so drawn as to entitle the executors of the will, who were not the same persons as those to be named as trustees, to vote such stock during the probate period. The executors named in the probated will and appointed were Rae Kingsley Blethen, F. D. Hammons and William K. Blethen. The decedent had also omitted to provide in his will for the distribution of the stock from the trusteeship at the expiration of the twenty-one-year period to his surviving sons et cetera. Instead, he had entirely excluded from his will and by it had disinherited one of the sons, Clarance B. Blethen.

The Ridders pray (paragraph 1 of the prayer) that the executors of Blethen's last will shall be caused forthwith to transfer the stock above referred to and held by them to the trustees named and provided for in the supplemental agreement so that it may be voted in accordance with the terms of the supplemental agreement.

In the alternative they pray (paragraph 2 of the prayer) that the executors be decreed as holding said stock for the referred to trustees, that the executors vote the stock as directed by said referred to trustees, and that the provision for submitting differences to the manager of The Associated Press be followed if and when differences arise between such trustees.

They further pray (paragraph 3 of the prayer) that the executors be decreed as holding said stock in trust for the eventual distribution of the income and corpus of the shares in accordance with the supple-

—(It was required by the Contract that Blethen should own 60% of the stock in this holding corporation.)

mental agreement, namely, distribution of income to named persons and of corpus, upon termination of the trust period, to all of the surviving sons and to the heirs of deceased sons share and share alike, per stirpes.

Without further reference to financial details the plaintiff below alleges that "the matter in controversy exceeds, exclusive of interest and costs, the value of $3,000.00." Upon the claim that this allegation is not supported by the factual allegations of the complaint, the defendants made their motion to dismiss, and thereupon plaintiffs requested the court to receive evidence relative to the value of the matter in controversy if the court should entertain any doubt upon that question. The request does not seem to have been noticed by the court, and the plaintiffs proffered no evidence upon the issue. The defendants, however, filed with the court an affidavit of Mr. Hammons, one of the executors of the Blethen will, to the effect that at the annual meeting of the stockholders of the "Seattle Times Company" (the new corporation) on January 19, 1943, all voting stock of such company was represented in person or by proxy and was voted; that an entirely new Board of Directors was unanimously elected at the meeting; and that the new directors assumed office immediately.

The contents of the affidavit were intended to show that certain allegations of the complaint were moot. We think the point need be given no attention as we decide the issue here presented without regard to this circumstance. One allegation is that at the 1942 stockholders meeting Ridder Brothers had voted 495 shares and the estate executors 505 shares resulting through cumulative voting in the estate's electing four of the seven directors. It is further alleged in the complaint that the directors so elected met immediately after election and, by the votes of the directors whose election was brought about by the voting of the said executors and contrary to the votes of the other three, Elmer E. Todd was elected president of the company and publisher of the paper. It is alleged in the complaint that Todd was inexperienced and Joseph E. Ridder whom the minority voted for was experienced, that differences arose as to the management of the newspaper, and that all of such were settled against the desires of the Ridders.

The court ordered the action to be dismissed after making the following findings:

"That there is no satisfactory proof of the value of the right to vote the corporate stock involved in the first matter in controversy and referred to in paragraphs 1 and 2 of the prayer of plaintiff's complaint.

"That the value to plaintiff of the second matter in controversy, as referred to in paragraph 3 of the prayer of plaintiff's complaint, is nominal and less than $3000.00 exclusive of interest and costs.

"That the loss of detriment to defendants if plaintiff should prevail on the second matter in controversy, as referred to in paragraph 3 of the prayer of plaintiff's complaint, exceeds in value the sum of $3000.00 exclusive of interest and costs."

The court concluded:

"That the above entitled proceeding does not involve the requisite jurisdictional amount and that the court does not have jurisdiction of the action."

Much confusion has arisen as to the meaning of the statute defining the minimum jurisdictional requirement as to value. The statute reads as follows: "The district courts shall have original jurisdiction as follows: (1) * * * where the matter in controversy exceeds, exclusive of interests and costs, the sum or value of $3,000, * * *," Judicial Code § 24, as amended, 28 U.S.C.A. § 41(1). Is the minimum requirement based upon (a) the value of the matter in controversy to the complainant, (b) the value of the matter in controversy to either the complainant or defendant, (c) the value of the thing to be accomplished, or (d) either or any one or any combination of these?

In the early case of Mississippi & M. R. Co. v. Ward, 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311, Ward sought the removal of a bridge which the railroad and others were maintaining across the Mississippi River, and the district court ordered a certain portion of the bridge "abated." Upon appeal to the Supreme Court of the United States it was contended that Ward had shown no sufficient amount of damage to maintain the action. The court said: "But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter in controversy, and the value of the object must govern." This case would seem to be authority for the view that if the value of the thing to be accomplished was equal to the dollar minimum of the jurisdictional requirement to anyone concerned in the action, then jurisdiction was satisfied. So far as the reading of the statute goes, it would seem that no confusion could be justified and that the court was right. However, much difficulty has been encountered in its application.

It was at one time the rule in federal courts that if jurisdictional facts were properly alleged in the pleadings, it became the burden of the party resisting jurisdiction upon the insufficiency of the amount involved to show the lack of jurisdiction. Hunt v. New York Cotton Exchange, 205 U.S. 322, 333, 27 S.Ct. 529, 51 L.Ed. 821, and cases cited therein. It is now, however, firmly fixed that whenever the point is presented for solution, the plaintiff in the case must carry the burden if the defendant questions the jurisdiction, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181–190, 56 S.Ct. 780, 80 L.Ed. 1135 (a detailed discussion of the whole problem). Frequently, the issue has turned upon the pecuniary result to the plaintiff of a judgment in the suit, because the result to the defendant was not mentioned by the parties, and naturally expressions have followed to the effect that

the jurisdictional amount is determined by the value of the object plaintiff is seeking. Glenwood Light & Water Co. v. Mutual Light, H. & P. Co., 239 U.S. 121, 125, 36 S.Ct. 30, 60 L.Ed. 174; Hunt v. New York Cotton Exchange, supra.

In the face of an appropriate objection on the part of defendant, the showing as to "amount in controversy" cannot be supplied by an allegation in the complaint that the general subject of the litigation is of a value equal to the required minimum. The pleading and the evidence introduced upon the hearing of the motion to dismiss an action seeking equitable relief must show such required amount to be of the value of the particular and limited thing sought to be accomplished by the action. Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248. The value of the "thing sought to be accomplished by the action" may relate to either or any party to the action. Smith v. Adams, 130 U.S. 167, 175, 9 S. Ct. 566, 32 L.Ed. 895; Mississippi & M. R. Co. v. Ward, 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311.

Applying these rules we agree with the district court's holding that the requisite jurisdictional amount as to the relief prayed for in the first and second paragraphs of the prayer in this case has not been shown. We reach a contrary conclusion with respect to the relief prayed for in the third paragraph, to-wit: that distribution of the stock shall be made out of the trust in accordance with the contract and the supplemental contract. Upon this latter phase of the case we are of the opinion that there was ample support in the bill of complaint to establish the minimum jurisdictional requirement as to each of the defendants to whom the stock would be distributed if the distribution should follow the terms of the contract.

Appellee makes the point that distribution of stock to the son who was disinherited by the probated will is the concern only of such son and that the plaintiffs here have no right to maintain an action which seeks to have the son benefited by the distribution from the trust. The conclusion reached by appellee is that no cause of action has been stated upon this item and that there could be no minimum value established where no cause has been pleaded. As we read the complaint upon this particular, we think the benefit to the plaintiffs consists in the enforcement of the provisions in the original and supplemental contracts. The benefits to be gained by the disinherited son are incidental. The accomplishment of the thing sought, viz., the distribution of the stock in accordance with the contract instead of in accordance with the will probated, is obviously of a value greater than the jurisdictional requirement.

It need hardly be mentioned that if the federal jurisdiction is fixed as to any part of the action, it is fixed as to the whole thereof.

Appellee argues that the Washington law would not permit the trustees to take the corpus of the trust and vote the stock immediately after the death of Mr. Blethen for the reason that the executors of the will, so appellee contends, will take such property and assume the duty of voting the stock during the period of probate. We think this issue is not before us.

Reversed.

GARRECHT, Circuit Judge (dissenting).

The majority opinion states there is ample support in the complaint to establish the minimum jurisdictional requirement as to each of the defendants to whom the stock would be distributed if distribution should follow the terms of the contract. This argument assumes that the true test of the jurisdictional amount is viewing the amount from the standpoint of what the defendant stands to lose. The other rule—the plaintiff viewpoint rule—is that the measure of the matter in controversy for purposes of jurisdiction is the value to the plaintiff.

The appellants rely on the case of Mississippi & M. R. Co. v. Ward, 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311 [hereinafter referred to as the Ward case], which states: "* * * But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern."

The appellants have strongly relied upon the language of this Ward case, but the

United States Supreme Court in Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 534, 51 L.Ed. 821, interpreted that language thusly:

"In Mississippi & Missouri Railroad Company v. Ward [67 U.S. 485], 2 Black 485, 17 L.Ed. 311, it was decided that jurisdiction is to be tested by the value of the object *to be gained by the bill.*" [Emphasis ours.]

It is the plaintiff who is to gain in the action and this is a statement of the plaintiff viewpoint rule. The "value of the object" approach to the measure of jurisdiction as used in the Ward case has been restricted by the United States Supreme Court to the plaintiff's viewpoint.

The United States Supreme Court in Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 32, 60 L.Ed. 174, discussed the Ward case further:

"We are unable to discern any sufficient ground for taking this case out of the rule applicable generally to suits for injunction to restrain a nuisance, a continuing trespass, or the like, viz., *that the jurisdictional amount is to be tested by the value of the object to be gained by complainant.* The object of the present suit is not only the abatement of the nuisance, but (under the prayer for general relief) the prevention of any recurrence of the like nuisance in the future. In Mississippi & M. R. Co. v. Ward [67 U.S. 485], 2 Black [485], 492, 17 L.Ed. 311, 314, it was said: 'The want of a sufficient amount of damage having been sustained to give the Federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.' The same rule has been applied in numerous cases, and under varying circumstances. [Cases cited.] [Emphasis added]

"The district court erred in testing the jurisdiction by the amount that it would cost the defendant to remove the poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful intervention by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction."

In this case, the Supreme Court followed the rule that the amount in controversy is to be tested by the value of the object to be gained by the complainant.

The decisions of the United States Supreme Court discuss the value of the right to suit or the value of the object to be gained, and both of these phrases are consistent only with the plaintiff viewpoint rule.

There is a recent case, Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 675, 86 L. Ed. 951, in which the action was brought by several plaintiffs. The district court dismissed the action because the nature of the suit was not such as to permit the aggregation of the claims of all the plaintiffs. The Circuit Court of Appeals, 8 Cir., 119 F.2d 105, reversed the dismissal on the ground that the claims could be aggregated for the purpose of determining the value of the matter in controversy. The Supreme Court said:

"The policy of the statute conferring diversity jurisdiction upon the district courts calls for strict construction. [Cases cited] Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof. * * * In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation. [Cases cited]"

The last phrase "pecuniary consequence to those involved in the litigation" is not to be interpreted as adopting the defendant's viewpoint rule as the court at no point discussed the loss or value to the defendant. This is also true of the Wheless v. St. Louis case, 180 U.S. 379, 382, 21 S. Ct. 402, 45 L.Ed. 583, which is cited in the Thomson v. Gaskill case.

A careful check of all the authorities cited by the appellants and quoted in the majority opinion will bear out the observation that the lower Federal courts have recognized the rule that the value in controversy may be viewed from the defendant's standpoint but there are no cases in which the United States Supreme Court has adopted this rule. I am of the opin-

ion that the plaintiff's viewpoint rule is the one recognized by the Supreme Court. It is the reasonable rule because the plaintiff must open the case and in order to sue in the Federal Court the plaintiff must have a matter in controversy of the value of $3,000. If the plaintiff's right is not worth that much, there is no jurisdiction.

The judgment of the District Court should have been affirmed.