327 F.2d 568
 GOVERNMENT EMPLOYEES INSURANCE COMPANY, a body corporate, Appellee,
v.
Robert J. LALLY, Sr., and Robert J. Lally, Jr., and William S. Iampieri, individually and as father and next friend of Thomas Joseph Iampieri, an infant, and Thomas Joseph Iampieri, Appellants.
 No. 9023.
 United States Court of Appeals Fourth Circuit.
 Argued October 1, 1963.
 Decided January 3, 1964.
 
 Samuel D. Hill and Everett L. Buckmaster, Baltimore, Md. (Norman P. Ramsey, Semmes, Bowen & Semmes, Samuel D. Hill, and Buckmaster, White, Mindel & Clark, Baltimore, Md., on brief), for appellants.
 Frederick J. Green, Jr., Baltimore, Md. (Lord, Whip, Coughlan & Green, Baltimore, Md., on brief), for appellee.
 Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.
 J. SPENCER BELL, Circuit Judge:
 
 
 1
 Robert J. Lally, Sr., Robert J. Lally, Jr., William S. Iampieri, individually and as next friend of Thomas J. Iampieri, and Thomas J. Iampieri, all residents of the State of Maryland, appeal from a district court declaratory judgment limiting insurance coverage afforded Lally, Jr., by appellee, Government Employees Insurance Company, a District of Columbia corporation, to $10,000.00.
 
 
 2
 On June 5, 1961, William A. Iampieri brought an action against the Lallys in the Baltimore City Court in his own name and on behalf of his son, Thomas J. Iampieri, for injuries sustained in an automobile accident by the younger Iampieri while a passenger in a 1956 Ford, owned by Lally, Sr., but operated at the time by his son, Lally, Jr. While the Baltimore City Court action was pending, the Lallys' insurance carrier, Government Employees Insurance Company [hereinafter GEICO], instituted this action in a federal district court, seeking a declaratory judgment that its liability, if any, to the Iampieris as a result of the accident of November 24, 1960, was limited to $10,000.00, less medical payments of $1,219.45 already made. The district court so held, and we affirm.
 
 
 3
 This action, based on diversity of citizenship and involving an amount in controversy in excess of $10,000, is within the jurisdiction of the federal courts. There is no question here as to diversity of citizenship, but a question does arise as to the amount in controversy, since GEICO seeks to limit its liability under the insurance policy to $10,000. The issue, however, is whether or not its liability will ultimately be determined to be three times that amount. The amount in controversy may be ascertained by reference to the provisions on the face of the policy which appellants, in good faith, maintain establish GEICO's liability at $30,000. Cf. United States Fid. & Guar. Co. v. Pierson, 97 F.2d 560 (8 Cir.1938). Thus, GEICO's petition for a declaratory judgment establishes that its liability under an automobile insurance policy is the matter in controversy; the amount in controversy is the pecuniary result to either party which that judgment would produce; in this case, a maximum of $30,000.00. Cf. Ridder Bros., Inc. v. Blethen, 142 F.2d 395 (9 Cir.1944); Ronzio v. Denver & R. G. W. R. R., 116 F.2d 604 (10 Cir.1940). The test of "value to either party" in determining the amount in controversy is especially appropriate where, as here, an insurance company, insuring a defendant being sued in a state action for an amount far in excess of $10,000, seeks to limit its liability to the defendant by bringing a subsequent declaratory judgment action in the federal courts.
 
 
 4
 The original Combination Family Automobile Insurance Policy, No. 2171541, here in question, was issued by GEICO to Lally, Sr., on April 12, 1957, to provide coverage on a 1955 Buick, which at that time was the only automobile owned by him. The policy provided maximum coverage of $20,000 for bodily injury to one person as a result of one accident. Although the original policy and later endorsements provide additional coverage for bodily injuries in one accident sustained by all persons in the aggregate, we are concerned here only with the injuries sustained by Thomas J. Iampieri. Hence, discussion of insurance coverage will be limited to bodily injury to one person as a result of one accident.
 
 
 5
 Protection under the original policy was available to Lally, Sr., or to any of his relatives, residing in his household, who might be in an accident involving the Buick. Coverage also extended to Lally, Sr., if he were driving a non-owned automobile, or to a relative, residing in the household, if that relative were driving a non-owned automobile not regularly furnished for such relative's use.[1] The basic policy was renewed annually by extension certificates through April 12, 1961, and was in effect, as later amended by the General Changes Endorsement, U-9, at the time of the accident.
 
 
 6
 Two endorsements were added subsequent to the issuance of the original policy. The first of these endorsements, denominated Statutory Coverage for Named Minors, UE-48, effective April 12, 1959, was issued by GEICO to provide coverage to Lally, Jr., as named insured, of up to $10,000 for bodily injury to one person as the result of one accident "in the operation of any automobile"[2]. Paragraph 5 of the UE-48 endorsement, however, states that:
 
 
 7
 "The above limits of liability [$10,000 for bodily injury to one person as a result of one accident] are included in and are not in addition to any limits of liability stated elsewhere in the policy. If the limits of liability stated in the policy are in excess of the above stated limits, such insurance as is afforded by the policy with respect to such additional limits applies exclusive of the application of this endorsement."
 
 
 8
 Lally, Sr., paid an annual premium of $10.05 for this endorsement.
 
 
 9
 A second and later endorsement, denominated General Change Endorsement, U-9, was issued by GEICO at Lally, Sr.'s request to become effective May 13, 1960. This endorsement carried an annual premium of $59.02 and was purchased by Lally, Sr., to provide insurance coverage on the 1956 Ford acquired by him on May 12, 1960. Its effect was to amend the basic policy to provide $10,000 maximum coverage for bodily injury to one person as a result of one accident while Lally, Sr., or a relative, residing in his household, was driving the Ford.
 
 
 10
 Appellants take the view that the UE-48 endorsement, being antecedent to the U-9 endorsement, must be interpreted as an endorsement to the original policy only, so that the Iampieris have claim to both the original policy, as endorsed by the UE-48 endorsement, and to the U-9 endorsement, which, they claim "was a new and separate policy on the 1956 Ford." They further maintain that the provisions of the UE-48 endorsement "blended in" with the maximum coverage provided in the original policy so that they are entitled to an additional $20,000, in excess and supplemental to the $10,000 recoverable under the so-called "separate policy" insuring the 1956 Ford.
 
 
 11
 We must disagree with appellant's contention that the UE-48 endorsement (effective April 12, 1959) must be interpreted in conjunction with the original policy and without regard to the later U-9 endorsement (effective May 13, 1960). While the contract of insurance existing between GEICO and Lally, Sr., at the date of the accident consisted of the original policy and two endorsements, these three writings formed constituent parts of an integrated contract. The chronological order in which the original policy and later endorsements were executed is of no significance; we are only concerned with the provisions of the insurance contract as it existed on the critical date of the accident, November 24, 1960. The fact that Lally, Sr., purchased an original insurance policy and subsequently took out endorsements thereto has the same legal effect as if Lally, Sr., had purchased one comprehensive insurance policy that was in effect on the date of the accident.
 
 
 12
 Language contained in the U-9 endorsement makes it clear that this endorsement is merely an amendment to the original policy and not a separate and additional policy of insurance. At the top of the endorsement is stated:
 
 
 13
 "It is agreed that policy [No. 2171541] is amended as shown by typewritten entries below and as indicated by a check mark ([]). If not not checked ([]), there is no change and the declaration, coverage and endorsements previously shown remain in full force and effect. * * *"
 
 
 14
 The checked entries relate solely to the 1956 Ford. Additionally, above the signature of the company representative is set forth the following:
 
 
 15
 "This endorsement forms a part of the captioned policy [No. 2171541] issued by the Government Employees Insurance Company to the named insured above and is effective as of 12:01 A.M. standard time on the effective date of the endorsement." (Emphasis added.)
 
 
 16
 Moreover, the UE-48 endorsement, although prior in time to the U-9 endorsement, must be read as an endorsement to the policy as it existed on November 24, 1960; i. e., the original policy, as amended by the U-9 endorsement, insuring the 1955 Buick for $20,000 and the 1956 Ford for $10,000. This is made clear by the language of the UE-48 endorsement (almost identical to that contained in the U-9 endorsement, quoted above):
 
 
 17
 "This endorsement forms a part of the above captioned policy [Policy No. 2171541] issued by the Government Employees Insurance Company to the named insured above and is effective as of 12:01 A.M. standard time on the effective date of the endorsement." (Emphasis added.) The provision of Paragraph 5 of the endorsement that "The above limits of liability [$10,000 for bodily injury to one person involved in one accident] are included in and are not in addition to any limits of liability stated elsewhere in the policy" clearly shows that the policy provisions relating to the operation of the Ford are controlling and limit GEICO's liability to $10,000. Had Lally, Jr., been driving the Buick (or a non-owned automobile not regularly furnished for his use) then other provisions would have governed and GEICO's liability would have been $20,000. This is demonstrated by the additional language in Paragraph 5 which states that:
 
 
 18
 "If the limits of liability stated in the policy are in excess of the above stated limits, such insurance as is afforded by the policy with respect to such additional limits applies exclusive of the application of this endorsement."
 
 
 19
 It will be noted that whether Lally, Jr., were driving the Ford or the Buick, the UE-48 endorsement would be inapplicable in and of itself. Limitations written into the endorsement indicate that in either circumstance provisions in the basic policy would govern exclusively.
 
 
 20
 The UE-48 endorsement, known as Statutory Coverage for Named Minors, served two purposes: it provided Lally, Jr., as named insured, insurance protection in the event that the basic policy under which he was an additional insured left him without coverage. The UE-48 endorsement would provide Lally, Jr., coverage, for instance, in the event he were involved in an accident while driving a non-owned automobile regularly furnished for his use or if he were driving an owned automobile not covered in the basic insurance policy. Neither is the case here. This coverage, moreover, would be available, under Paragraph 2 of the UE-48 endorsement, in addition to "any other valid and collectible insurance." (Emphasis added.) The language "any other insurance" has been construed by Maryland's highest court to mean insurance separate and distinct from the policy of which the UE-48 endorsement forms a constituent part. Rodda v. Nationwide Mut. Ins. Co., 230 Md. 38, 185 A.2d 380 (1962).
 
 
 21
 A second purpose of the UE-48 endorsement was to enable Lally, Jr., to obtain a Maryland automobile driver's license by providing documentary proof of his financial responsibility.[3]
 
 
 22
 Based on the foregoing interpretation of the policy in effect as of the date of the accident on November 24, 1960, we hold that the UE-48 endorsement has no application to the circumstances of this case; that the policy provisions pertaining to the operation of the 1956 Ford as contained in the U-9 endorsement govern; and that GEICO's liability thereunder is limited to $10,000, less medical payments of $1,219.45 already made.
 
 
 23
 In Rodda v. Nationwide Mut. Ins. Co., supra, the Maryland Court of Appeals held that coverage under a Statutory Coverage for Named Minors endorsement, identical to the UE-48 endorsement here, was unavailable where the insured was covered under specific provisions in the basic policy. We find it of no consequence that in the Rodda case only one automobile was insured under the automobile insurance policy, where here there are two. The amended policy, existing at the date of the accident, covered the two automobiles owned by Lally, Sr., the Buick and the Ford, but provided different coverage in the operation of each. The central fact there, as here, was that the basic policy provisions governed to the exclusion of the UE-48 endorsement.
 
 
 24
 Since in our view the UE-48 endorsement has no application to the facts before us, we need not consider appellants' second contention that it does apply and "blends into" the maximum coverage provisions of the basic policy, thereby providing coverage of $20,000. Appellants would be entitled to $20,000 under the basic policy only if provisions relating to operation of the Buick or to nonowned automobiles governed. They do not. For this reason and for the reasons stated above we find no error in the judgment of the district court.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Pertinent policy provisions are as follows:
 "Persons Insured: The following are insureds under Part 1:
 (a) With respect to the owned automobile
 (1) the named insured and any resident of the same household,
 (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
 (b) With respect to a non-owned automobile,
 (1) the named insured,
 (2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative;
 `relative' means a relative of the named insured who is a resident of the same household;
 * * *
 `owned automobile' means
 (a) a private passenger or utility automobile described in the policy * * *."
 
 
 [2]
 Pertinent provisions of the Statutory Coverage for Named Minors, UE-48, are as follows:
 "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability applies to the operation of any automobile by the minor named below in accordance with the provisions of Section 92 of Article 66½ of the Annotated Code of Maryland (1951 Edition), as amended, subject to the following provisions:
 
 
 [1]
 The insurance afforded by this endorsement applies only to the minor named below
 
 
 [2]
 The insurance afforded by this endorsement shall be excess over any other valid and collectible insurance available to the minor named below either as an insured under a policy applicable with respect to the automobile or otherwise
 * * *.
 
 
 [4]
 The insured named in the policy agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreements contained in this endorsement
 
 
 [5]
 The limits of bodily injury liability for the insurance afforded by this endorsement are:
 $10,000 each person
 $20,000 each accident
 The limit of property damage liability for the insurance afforded by this endorsement is:
 $ 5,000 each accident
 The above limits of liability are included in and are not in addition to any limits of liability stated elsewhere in the policy. If the limits of liability stated in the policy are in excess of the above stated limits, such insurance as is afforded by the policy with respect to such additional limits applies exclusive of the application of this endorsement. * * *"
 
 
 [3]
 Ann.Code of Md. Art. 66½, §§ 93, 140 (1957), makes proof of a minor's financial responsibility a condition precedent to obtaining a driver's license