**Molly Black HOFFMAN, Marty Butler, Roland Ezelle Estridge, Raymond Tarlton, Mary Louise Tarlton, William Clyde Thompson, Myrtle McDonald Thompson, Reid Garrison, Delores Ann Garrison, Joel M. Meggs, and Rachel Pemberton Plaintiffs,**

v.

**VULCAN MATERIALS COMPANY, Defendant.**

No. 1:98CV00152.

United States District Court, M.D. North Carolina.

Sept. 4, 1998.

Henry T. Drake, Wadesboro, NC, for plaintiffs.

Richard T. Rice, H. Grady Barnhill, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for defendant.

## MEMORANDUM OPINION AND ORDER

ELIASON, United State Magistrate Judge.

This matter comes before the Court on plaintiffs' motion to remand the case back to state court. In conjunction therewith are two procedural matters—defendant's motion to strike plaintiffs' reply brief and defendant's motion for leave to file a supplemental memorandum.

## Facts, Procedural History, and Contentions of the Parties

On February 9, 1998, plaintiffs, who are homeowners, filed a complaint in state court in Richmond County, North Carolina. They alleged that defendant committed nuisance and trespass against them through its operation of a quarry near their homes. The quarrying process allegedly creates excessive dust, flying rocks, noise, and blasting shocks. As a consequence, plaintiffs contended that their health, peace of mind, land, and homes have been damaged. In accordance with state law, plaintiffs listed their damages only as "in excess of $10,000." *See* n. 2, *infra.* They each sought an amount in excess of $10,000 for damage to their homes and property from the blasting shocks, an amount in excess of $10,000 for the trespass and nuisance created by the dust and rocks which land on their property, and an amount in excess of $10,000 in punitive damages. They also asked for an injunction to prevent defendant's continuing trespass and nuisance.

Subsequently, defendant removed the case to this Court pursuant to 28 U.S.C. § 1441, contending that the case met the requirements for diversity jurisdiction as set out in 28 U.S.C. § 1332. Plaintiffs countered by seeking remand back to state court. They do not dispute that the parties are of diverse citizenship as required by 28 U.S.C. § 1332(a). However, they argue that defendant fails to show the jurisdictional amount of $75,000 because, on the face of the complaint, they only seek damages of *in excess* of $30,000 each.

Defendant argues that in determining the jurisdictional amount, the Court may look beyond the dollar amount of damages sought by plaintiffs and may consider as well the amount which plaintiffs' injunction request, if granted, would cost defendant. In support of its assertion, defendant has supplied an affidavit from Rodney Hobbs, an Area Production Manager for defendant. He states that closing the quarry near plaintiffs' homes would deprive defendant of at least $4,862,-000 per year in pretax earnings, that each lost hour of daily production would amount to an annual economic impact of more than $979,000, and that any restriction which measurably reduced defendant's output would have an annual economic impact on defendant in excess of $75,000. Plaintiffs reply that the Court should determine the amount in controversy only from plaintiffs' perspective and not consider the economic impact on defendant.[1]

## Discussion

The law used to determine jurisdictional amount in "diversity" cases is quite clear, up to a point. Federal courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a). In addition, any matter which may have been originally brought in federal court, but is filed in a state court, may be removed by the defendant to federal district court. 28 U.S.C. § 1441.

 In either a case originally filed in, or one removed to, federal court,

> [t]he party seeking to invoke the jurisdiction of the federal courts has the burden of proving its existence by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount.

14A Charles Alan Wright, et al., *Federal Practice and Procedure* § 3702, at 19 (2d ed.1985). Accordingly, in a removal case, the defendant, rather than the plaintiff, has the burden of proving that the jurisdictional requirements for removal are met. *Griffin v. Holmes,* 843 F.Supp. 81 (E.D.N.C.1993) (cit-

---

1. Defendant filed a motion to strike plaintiffs' reply on the basis that it was untimely. Each side made a miscalculation. Defendant now admits that its response was indeed served on April 16 rather than April 15. However, it notes that plaintiffs' reply was filed on May 6 rather than May 5 and so actually is still one day late as originally contended. Plaintiffs' reply was marked filed early on May 6, 1998. However, the document's signature page shows that it was served by mail in a timely fashion on May 5, 1998. Given that the reply was filed only one day late, that it was served on time, and that defendant has alleged no prejudice due to the late filing, the Court refuses to impose a penalty as harsh as striking a pleading. Instead, the Court merely cautions plaintiffs' attorney to be mindful of future deadlines.

ing *Kirchner Gafford v. General Electric Co.*, 997 F.2d 150, 155 (6th Cir.1993)). For a removal, this means defendant must prove to a "legal certainty" that plaintiffs' claim exceeds $75,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). However, a plaintiff's right to select the forum for its claim is stronger that a defendant's right to remove. Therefore, any doubts about removal must be resolved in favor of remand. *Griffin*, 843 F.Supp. at 84; *Burns*, 31 F.3d at 1095. In this case, the jurisdictional dispute only involves the amount in controversy, and not diversity of citizenship.

■ The amount in controversy is normally determined from the face of the pleadings. *St. Paul*, 303 U.S. at 289–90, 293, 58 S.Ct. 586, 82 L.Ed. 845. In this case, no specific amount is alleged in the complaint. Therefore, it will not aid in determining whether the action meets the jurisdictional amount in controversy. This is because, under North Carolina pleading rules, in negligence actions, claims in excess of $10,000 may only so state.[2] That is how plaintiffs plead their demand for judgment.[3]

2. Rule 8. General rules of pleadings.

[(a)] (2) A demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded. In all negligence actions, and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand dollars ($10,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000). However, at any time after service of the claim for relief, any party may request of the claimant a written statement of the monetary relief sought, and the claimant shall, within 30 days after such service, provide such statement, which shall not be filed with the clerk until the action has been called for trial or entry of default entered. Such statement may be amended in the manner and at times as provided by Rule 15.

N.C. Gen.Stat. § 1A–1, Rule 8
Rules Civ. Proc., Rule 8, G.S. § 1A–1

3. Because North Carolina complaints will not state the exact amount in controversy, this state pleading rule poses a special difficulty for the federal court and the parties in a removal situation. 14A Charles Alan Wright, et al., *Federal Practice and Procedure* § 3725, at 423–24 (2d ed.1985). A defendant only has thirty days from being served to file for removal and the time limitations are strictly construed. 14A Wright, *supra*, § 3732, at 527; *Marler v. Amoco Oil Co.*, 793 F.Supp. 656, 659 (E.D.N.C.1992). When the amount is not certain, there is a safety valve permitting removal within thirty days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable ...." 28 U.S.C. § 1446(b). Notwithstanding, in all events, the case may not be removed more than one year after commencement of the action. *Id.*

The better constitution of Section 1446(b) would require defendants, within the thirty-day removal period, to use the state rules of civil procedure to compel plaintiff to set out the amount of monetary relief in negligence actions. *See* n. 2, *supra*. This would have several benefits. First, it obviates guessing at the amount in controversy by requiring the plaintiff to make a firm election concerning the amount of damages it will claim in state court. *See generally Adkins v. Gibson*, 906 F.Supp. 345, 348 (S.D.W.Va.1995) (the amount stated is subject to accountability under Fed.R.Civ.P. 11 and similar rules). Second, it encourages early removals to avoid unnecessary delay, waste of judicial resources, and forum shopping. *Lovern v. General Motors Corporation*, 121 F.3d 160, 163 (4th Cir.1997). *See Essenson v. Coale*, 848 F.Supp. 987, 990 (M.D.Fla.1994). Yet, improvident removals will not be encouraged so long as the thirty-day removal period is tolled while the state procedure is pursued.

Not all courts agree on whether a defendant has a duty to ascertain the amount in controversy within the thirty-day period when an exact amount of damages is not set out in the complaint. *See* Brian Sheppard, J.D., Annotation, *When Does Period for Filing Petition for Removal of Civil Action From State Court to Federal District Court Begin to Run under 28 U.S.C.A. § 1446(B)*, 139 A.L.R. FED. 331 (1997). There is substantial authority for the view that a defendant does not have a duty to put a value on a plaintiff's claim within that thirty-day period. *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir.1992), *cert. denied*, 507 U.S. 967, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993); *Essenson v. Coale*, 848 F.Supp. at 989 (no duty to translate injury claims into specific dollar amount); *Petersen v. Cates Sheet Metal Industries, Inc.*, No. 95-6216-CV-SJ-6, 1996 WL 40999 * 4 (W.D.Mo. Jan. 30, 1996) (collecting cases). One court has rejected such a procedure. *Magnatech Engineering, Inc. v. Weaver Elec. Co.*, No. CIV. A. 97-2648-EEO, 1998 WL 171125 (D.Kan. March 3, 1998). However, a defendant should not be allowed to ignore plain evidence that plaintiff

When federal jurisdiction is not plain from the face of a plaintiff's complaint, the defendant must offer evidence in support of its claim that the controversy satisfies the federal jurisdictional amount. The court makes its determination on the basis of the existing record. 14A Wright, *supra*, § 3725, at 417. This means pleadings, affidavits or other matters in the record. 14A Wright, *supra*, § 3702, at 26; 14A Wright, *supra*, § 3725, at 223 (Supp.1997).

In the instant case, plaintiffs' complaint only shows that the damages for each plaintiff exceeds $30,000. Defendant did not file a motion under Rule 8 of the North Carolina Rules of Civil Procedure in order to ascertain the exact amount in controversy as to each plaintiff. It, therefore, becomes incumbent on defendant to point to some evidence in the record or to submit independent evidence which would show that the plaintiffs' damage claims exceed $75,000. Defendant fails to do this. Instead, it submitted a supplemental brief, to which plaintiffs object,[4] requesting that the Court combine all punitive damage demands and attribute the total demand to each plaintiff. However, defendant has failed to suggest an amount for the punitive damage award. Moreover, because punitive damages are discretionary, the Court would need substantial evidence before it would be willing to place a valuation on that kind of damage award. Consequently, the Court finds that defendant has failed to meet its burden of proof as to the amount of damages sought by plaintiffs. However, this does not end the matter because not only have plaintiffs sought money damages, but they also seek injunctive and declaratory relief.

In an action such as this one where plaintiffs seek injunctive or declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977) (citations omitted). Some courts construe this to mean the value of the right to be enforced or protected. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.,* 120 F.3d 216, 219 (11th Cir.1997); *Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Alfonso v. Hillsborough County Aviation Authority,* 308 F.2d 724, 726 (5th Cir.1962); *Seven–Up Company v. Blue Note, Inc.,* 260 F.2d 584, 585 (7th Cir.1958), *cert. denied* 359 U.S. 966, 79 S.Ct. 878, 3 L.Ed.2d 835 (1959).

There is basic agreement among the courts concerning *what* must be valued. The seemingly never ending source of confusion concerns *how* to value it. The Supreme Court itself has never made one clear, definitive statement on how to go about placing a monetary value on the "object of the litigation." Consequently, lower courts, when faced with the myriad of fact patterns which arise in diversity cases, have formulated a number of different valuation rules, each with indirect support from various Supreme Court opinions.

One such rule is known as the "plaintiff-viewpoint" rule. *See generally* 14A Wright, *supra*, § 3703. Courts applying this rule look only to the benefit to be gained by the plaintiff in order to find the amount in controversy.[5] The main criticism of the plain-

---

seeks damages in excess of the federal jurisdictional amount. *Marler v. Amoco Oil Co.,* 793 F.Supp. at 659 (demand letters). There would appear to be no good reason to allow defendants to assume that "in excess" claims are below the federal jurisdictional amount. This is particularly true when state rules provide them with a mechanism for obtaining timely and accurate information so that a decision on removal can be quickly made.

4. Plaintiffs request the supplemental brief be stricken for not being allowed under the local rules. The Court declines the invitation, if for no other reason, because the supplemental brief does not help defendant's cause.

5. The late Judge Armistead Dobie of the Fourth Circuit was a strong proponent of this rule which a number of courts have adopted. 14A Wright, *supra*, § 3703. In fact, it appears to be the clear rule in at least four federal circuits. *See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics,* Inc., 120 F.3d 216, 219–220 (11th Cir.1997); *Columbia Gas Transmission Corp. v. Tarbuck,* 62 F.3d 538, 542 (3d Cir.1995); *Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Alfonso v. Hillsborough County Aviation Authority,* 308 F.2d 724, 726–727 (5th Cir.1962). Other circuits seem to apply the plaintiff-viewpoint rule

tiff-viewpoint rule is that it is an imperfect way to realize the purpose behind the jurisdictional amount limit, which is to keep trivial cases out of the federal courts. 14A Wright, *supra*, § 3703, at 66–67. Unfortunately, the rule achieves this goal by also keeping out cases where great sums of money are involved on the part of the defendant, but not the plaintiff.

Courts which utilize the plaintiff-viewpoint rule are, of course, unable to cite to a Supreme Court decision that directly mandates it. Instead, they must rely on the case of *Glenwood Light & Water Company v. Mutual Light, Heat, & Power Company*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915), for support. However, that case is less than satisfactory for the purpose because of its unique fact situation.

In *Glenwood*, the town of Glenwood Springs, Colorado, had granted both parties the right to construct power plants and to supply the town with electricity. Defendant constructed its power lines so near to the pre-existing lines of the plaintiff that they interfered with the plaintiff's maintenance and operation of its lines. Plaintiff requested an injunction to restrain defendant's activities. *Id.* 239 U.S. at 122–124, 36 S.Ct. at 31. The district court found that the cost to defendant to move the offending lines would be less than the $3,000 jurisdictional amount and remanded the action. *Id.* 239 U.S. at 124, 36 S.Ct. at 31. The Supreme Court reversed, holding that the trial court erred by judging the amount in controversy using the lesser cost to the defendant rather than looking at the greater value of plaintiff's right to supply power without wrongful interference. There was no question but that this right was worth more than the jurisdictional amount. *Id.* 239 U.S. at 126, 36 S.Ct. at 32.

Courts relying on *Glenwood* tend to interpret it as forbidding using the cost to defendants when valuing injunction cases. That interpretation is strained because *Glenwood* does not cover the situation where the value to defendant, but not the plaintiff exceeds the jurisdictional amount. 14A Wright, *supra*,

§ 3703, at 64. Limiting *Glenwood* to its specific facts more fully reflects the policy goal that the amount in controversy limitation should allow federal courts to hear important cases while excluding trivial ones. *See Id.* at 66–67.

An alternative rule, known as the either-viewpoint rule, has been adopted by a number of circuits and appears to be the more recent trend. *Id.* at 66; *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997), *cert. denied sub nom.* —— U.S. ——, 118 S.Ct. 1178, 140 L.Ed.2d 186, and —— U.S. ——, 118 S.Ct. 1336, 140 L.Ed.2d 498, and —— U.S. ——, 118 S.Ct. 1337, —— L.Ed.2d —— (1998); *Oklahoma Retail Grocers Association v. Wal–Mart Stores, Incorporated*, 605 F.2d 1155, 1159 (10th Cir.1979); *Williams v. Kleppe*, 539 F.2d 803, n. 1 (1st Cir.1976) (dicta); *Tatum v. Laird*, 444 F.2d 947, 951 (D.C.Cir.1971), *rev'd on other grounds*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir.1944) (non-class action case).

Like the proponents of the plaintiff-viewpoint rule, the courts which use the either-viewpoint rule are also unable to point to a Supreme Court case which definitively establishes their test. Instead, they rely on Supreme Court cases decided both before and after *Glenwood* which use either-viewpoint language and require a narrow reading of *Glenwood* for purposes of consistency. *See Smith v. Adams*, 130 U.S. 167, 9 S.Ct. 566, 32 L.Ed. 895 (1889); and *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

In *Smith*, the Court, construing a statute with language similar to that found in 28 U.S.C. 1332(a), stated that,

> [i]t is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed, or by the **pecuniary result to one**

---

in limited circumstances such as certain class action lawsuits. *See Snow v. Ford Motor Company*, 561 F.2d 787, 790–791 (9th Cir.1977); *Mas-*

sachusetts *State Pharmaceutical Association v. Federal Prescription Service, Inc.*, 431 F.2d 130, 132 (8th Cir.1970).

**of the parties** immediately from the judgment.

*Smith,* 130 U.S. at 175, 9 S.Ct. at 569 (emphasis added). This statement was echoed more than 50 years later in *Thomson* when the Court determined that "[i]n a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its **pecuniary consequence to those involved** in the litigation." *Thomson,* 315 U.S. at 447, 62 S.Ct. at 675–676 (emphasis added). Additional, albeit implicit, minimal support may be found in cases reaching the Supreme Court where lower courts relied on the value of the case to defendants to find jurisdiction amount. *See Tatum v. Laird,* 444 F.2d 947; and *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (lower court relied on cost to defendant to find jurisdiction, Supreme Court failed to even discuss the issue).

Fourth Circuit law, which controls this case, appears to be somewhat unsettled. Relying partially on *Glenwood,* one panel of the Fourth Circuit, which included Judge Dobie, made the statement that "[i]t is well settled that the measure of jurisdiction in a suit for injunction is the value to plaintiff of the right which he seeks to protect." *Purcell v. Summers,* 126 F.2d 390, 394 (4th Cir.), *cert. denied,* 317 U.S. 640, 63 S.Ct. 32, 87 L.Ed. 516 (1942). Of course, as recounted above, the state of the law in this area since 1942 has been anything but settled. More importantly, the statement in *Purcell* is not binding because it is dicta. *Pennsylvania Insurance Company v. Allstate Insurance Company,* 226 F.Supp. 99, 102 (W.D.Va.1964). The property involved in *Purcell* was of equal value to both plaintiff and defendant. Therefore, the court did not need to pick between a plaintiff-viewpoint and an either-viewpoint rule.

Further clouding the waters of the case law in this circuit is the case of *Government Emp. Ins. Co. v. Lally,* 327 F.2d 568 (4th Cir.1964), which was decided more than twenty years after *Purcell.* Although *Lally* did not involve a request for an injunction, the court in *Lally* made the broad statement that "the amount in controversy is the pecuniary result to either party which [a] judgment would produce." *Id.* 327 F.2d at 569. It must be noted that the phrase "pecuniary result" is quite similar to the language found in *Smith* and *Thomson,* which other courts use to support an either-viewpoint rule. At least one district in the Fourth Circuit has apparently applied an either-viewpoint rule in an injunction case. *Bryant Electric Company v. Joe Rainero Tile Company, Inc.,* 84 F.R.D. 120, n. 3 (W.D.Va.1979).

The above review satisfies the Court that neither Supreme Court nor Fourth Circuit law commands it to follow the plaintiff-viewpoint rule, the either-viewpoint rule, or any "viewpoint" rule. Indeed, it would appear that adoption of "viewpoint" valuation has led to some distraction and a great deal of confusion. The Supreme Court's cases do not mention "viewpoint" value. Rather they state that "the amount in controversy is measured by the value of the object of the litigation" and that, generally, the value is measured by "pecuniary consequences to those involved in the litigation." *Hunt,* 432 U.S. at 347, 97 S.Ct. at 2443; *Thomson,* 315 U.S. at 447, 62 S.Ct. at 675–676. Any rule constructed for valuing the amount in controversy must take into account that diversity cases, like their appellation, present federal courts with endlessly diverse sets of facts and demands for relief beyond simple money judgments.

■ In order to take into account both the factual variances and the numerous types of relief, the Court feels it best to move away from "viewpoint" terminology and instead recognize that any one case may be legitimately valued in a number of different ways, no one of which may be said to inherently represent true value in every case. By "value" the Court understands that its duty is to find the economic worth of the "object in controversy." In a free market situation, any one object may have a different value to different individuals based on need, taste, etc. Nevertheless, appraisers and auditors often give opinions based on value to hypothetical willing sellers and buyers. Likewise, in a lawsuit seeking declaratory and injunctive relief, the relief will have both a cost and benefit to the parties, depending on whether

relief is granted or denied. No one economic analysis will be right for all cases.

For example, in cases where injunctions or declaratory judgments are requested, the value of the relief could be determined by considering how much it would cost the plaintiff to purchase the given relief and how much the defendant would be willing to pay the plaintiff to be rid of the injunction. One federal court of appeals has suggested such an approach. *See In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d at 609. There, the plaintiffs purposely did not allege damages exceeding the jurisdictional threshold as they had a right to do. However, they also asked for injunctive relief. The Seventh Circuit has adopted the either-viewpoint rule. It noted that while the value of an injunction to each plaintiff may not be easy to calculate, a defendant could show jurisdictional amount by measuring the costs defendant would face if it had to alter its method of business and/or if it had to forego a lucrative transaction. *Id.* If the object of the injunction does not normally have economic value, a court may allow consideration of defendant's clerical and ministerial costs of compliance. *Id.* However, the *Brand Name* court did not have to ultimately resolve the issue because defendants' failed to offer any proof.

A flexible approach better reflects the Supreme Court's mandate to consider the "pecuniary consequence to those involved in the litigation." *Thomson,* 315 U.S. at 447, 62 S.Ct. at 676. It fulfills without favoritism to either side the original purpose of jurisdictional amounts by only keeping minor cases out of federal court. This broader approach to valuation will allow the court to make better reasoned decisions by demanding a better evidentiary record. Defendants will no longer need to make gross speculations concerning the value to plaintiff of the injunction. They can set their own value based on their knowledge of their own affairs and back the assertions with facts and reasoned opinions. The Court will be in a position to demand and get higher quality offers of proof.

■ Turning now to the case before the Court, the amount in controversy must be greater than $75,000 in order for the Court to have jurisdiction. The plaintiffs have each requested in excess of $30,000 in damages in addition to an injunction. Therefore, if defendant can show that the injunction is worth more than $45,000 to any one plaintiff, then plaintiffs' motion to remand must be denied.[6]

Plaintiffs have requested the injunction in order to protect their properties and their peace of mind. Plaintiffs have not put any information into the record concerning the value of their properties and the effect on property values of defendant's continued operations. Nor can the value of the injunction be determined based on plaintiffs' peace of mind. This is too subjective without more facts. That does not end the matter because defendant has offered evidence of the value of the injunction to itself.

Defendant runs a large-scale quarry. It has presented an affidavit showing a number of different ways of valuing the harm to it of any meaningful curtailing of its operations. The affidavit states:

(a) If the Rockingham Quarry were closed completely, Vulcan would lose at least $4,862,000.00 per year in pretax earnings, which is based upon conservative

---

**6.** In regard to the $45,000 amount, two matters need to be pointed out. First, because the parties have not raised the issue, the Court is making the assumption that if the injunction is valued at $45,000, this will not decrease the $30,000 amount claimed in damages, either by reducing future damages or punitive damages.

Second, the Supreme Court's non-aggregation rules require that the amount in controversy be determined for each defendant as to each plaintiff. 14A Wright, *supra,* § 3704; *Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 607–608 (7th Cir.1997), *cert. denied sub*

*nom.* —— U.S. ——, 118 S.Ct. 1178, 140 L.Ed.2d 186, and —— U.S. ——, 118 S.Ct. 1336, 140 L.Ed.2d 498, and —— U.S. ——, 118 S.Ct. 1337, —— L.Ed.2d —— (1998). If each plaintiff has a separate right to be free from defendant's acts, then the value of the injunction is determined only in regard to that plaintiff. *Id.* However, if the plaintiffs have an undivided interest in the relief, this total, single amount is used. In *Brand Name,* each plaintiff was seeking relief from alleged collusion pricing. Consequently, it may have cost defendant very little to cease the activity with respect to any one plaintiff.

production and sales volumes for this facility.

(b) If the Rockingham Quarry operations were restricted by the hours of operation, the annual economic impact to Vulcan for each hour of lost production per day would exceed $979,000.

(c) The economic impact of any other restriction on the operation of the Rockingham Quarry would depend upon the nature of the restriction(s), but it is safe to predict that any restriction that causes a measurable reduction in the amount of crushed stone produced by this quarry would have an annual economic impact to Vulcan far in excess of $75,000.00.

(Docket no. 10, Affidavit at 2)

Defendant also cites the loss of jobs to employees and harm to companies purchasing its materials. This does not constitute value to the defendant, except perhaps indirectly. The losses cited if quarry operations were curtailed is better evidence of the value of the injunction to defendant. And, because the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction so the loss will be attributed to each plaintiff. *See* n. 6, *supra.*

Plaintiffs have not disputed the figures. If the quarry were closed, the jurisdictional amount is clearly met merely on an income valuation. Alternatively, even if the value of lost production per hour actually represents lost sales, not net income, it seems clear that a restriction in quarrying of one hour per day over some reasonable time period will still have a value to defendant of over $45,000. Therefore, defendant has met its burden of proof and has shown that, between the money damages and the value of the injunction, the $75,000 amount in controversy requirement is met in this case. Because the necessary amount is present, the Court has jurisdiction over the matter and plaintiffs' motion to remand must be denied.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to remand (docket no. 8) is denied.

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiffs' reply to defendant's response to plaintiffs' motion to remand (docket no. 16) is denied.

**IT IS FURTHER ORDERED** that defendant's motion requesting leave to file a supplemental memorandum in opposition to plaintiffs' motion to remand (docket no. 17) is denied as moot.