**Diana G. McCOY, Plaintiff,**

v.

**ERIE INSURANCE COMPANY, et al., Defendants.**

**Civ.A. No. 2:01–0054.**

United States District Court, S.D. West Virginia, Charleston Division.

June 18, 2001.

---

D. Kevin Moffatt, Harless & Moffatt, PLLC, Charleston, WV, Ronald R. Parry, David A. Futscher, Arnzen, Parry & Wentz, PSC, Covington, KY, Judy L. Cates, Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz & Glass, Belleville, IL, Christopher A. Seeger, Seeger Weiss LLP, New York City, for plaintiff.

James D. Lamp, Sheryl A. Rucker, Lamp, O'Dell, Bartram, Levy & Trautwein, Huntington, WV, Jeffrey A. Less, Paul B. Bech, Bazelon Less & Feldman, P.C., Philadelphia, PA, for defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motion to remand and Defendants' motion to dismiss.[1] Both motions are **DENIED**.

## I. FACTUAL BACKGROUND

On May 17, 2000 Plaintiff Diana G. McCoy was involved in an accident that seriously damaged her car. Erie insured the vehicle.[2] The applicable Policy contained the following language under the heading "Physical Damage Coverages:"

**OUR PROMISE—COMPREHENSIVE COVERAGE**

> We will pay for loss to an auto we insure and its equipment not caused by collision or upset. We will pay for loss less the deductible, if any, shown on the Declarations. Comprehensive coverage includes glass breakage, contact with persons, animals, birds, missiles or falling objects. Should only your windshield be damaged, we will not apply the deductible if the windshield is repaired rather than replaced.

**OUR PROMISE—COLLISION COVERAGE**

> We will pay for loss to an auto we insure and its equipment caused by collision or upset. We will pay for loss less the deductible shown on the Declarations.

(Ex. 1, Not. of Remov. at 7.) The term "loss" was defined by the Policy as "direct and accidental damage or loss." (*Id.*)

Erie elected to repair the vehicle and paid $6,802.34 for the work. McCoy, however, asserts Erie has a further financial obligation to her under the Policy. She asserts no amount of repair work could have returned her vehicle to its "pre-loss condition" so as to account for what she calls "diminished market value" (DMV). Erie has refused her claim for DMV compensation.

McCoy asserts she and other West Virginia policyholders paid premiums to Erie reasonably expecting the insurer would cover DMV. Instead, she asserts Erie has routinely and deliberately concealed DMV coverage and refused to pay for it.

---

1. Plaintiff also seeks oral argument. The request is **DENIED** because the facts and legal contentions are discussed adequately in the materials before the court. Argument is not currently necessary.

2. The Complaint names as Defendants Erie Insurance Company, Erie Insurance Exchange, and Erie Insurance Property and Casualty Company. For simplicity, the Court refers to the Defendants collectively as "Erie."

On October 20, 2000 McCoy, individually, and on behalf of unnamed putative class members, instituted this action against Erie. McCoy asserts her claim, and that of each and every unknown class member, "is less than $75,000.00 and therefore federal jurisdiction does not exist in this case." (Compl. ¶ 2.) She specifically seeks the exclusion from the putative class of "all persons who have claims in excess of $75,000.00[,]" (*id.* ¶ 24), and requests a judgment "Limiting the recovery of McCoy and each individual Class Member to a sum not to exceed $75,000.00." (*Id.* at ¶ f.)

The Complaint, however, seeks substantial relief. McCoy requests injunctive and declaratory relief requiring Erie to (1) disclose DMV coverage and pay associated losses; (2) calculate DMV and other losses when claims are made; and (3) "disgorge all ill-gotten profits and gains realized from [its] damage calculation practices[.]" McCoy further requests (1) attorney fees and costs; (2) compensatory and punitive damages; and (3) the imposition of a constructive trust to include monies previously paid by McCoy and the putative class, including premiums, service charges and other fees.

Erie removed, but McCoy countered with a motion to remand. Erie asserts diversity jurisdiction is met, alleging the requisite amount in controversy is satisfied by, *inter alia,* McCoy's claims for unjust enrichment and disgorgement of profits and the demands for declaratory and injunctive relief. Erie also moves to dismiss the case.

## II. DISCUSSION

### A. *Motion to Remand*

#### 1. Effect of Plaintiff's Attempt to Limit the Amount in Controversy

In *Iowa Central Ry. Co. v. Bacon,* 236 U.S. 305, 35 S.Ct. 357, 59 L.Ed. 591 (1915), the plaintiff asserted he had been damaged in the sum of $10,000.00, but requested a judgment of only $1,990.00, $10.00 short of the $2,000.00 amount-in-controversy requirement. On the question of subject matter jurisdiction, the Supreme Court stated "The prayer for recovery was for $1,990, and consequently the amount required to give jurisdiction to the Federal court was not involved. The filing of the petition and bond did not, therefore, effect a removal of the case." *Id.* at 310, 35 S.Ct. 357.

Three decades later in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court addressed a post-removal attempt to reduce the pled amount in controversy to a sum below the statutory minimum. *Red Cab* stated similarly:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.

> . . . .

> *If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.*

*Id.* at 288–89, 293, 58 S.Ct. 586 (emphasis added).

Many courts have seized on the *Bacon* and *Red Cab* dicta as a bright-line rule compelling remand where a specific sum less than the jurisdictional amount is stated. That approach, however, may not assure the diverse defendant exposure to a damage award ultimately less than the jurisdictional minimum. Many state court

systems, including West Virginia, have interpreted their civil rules amendments in a way that encourages an adroit plaintiff to deny a diverse defendant access to the federal forum and yet, later, expose that defendant to a damage award that would have supported exercise of federal jurisdiction.

To illustrate, *Rule* 54(c), *West Virginia Rules of Civil Procedure*, provides in part:

[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even *if the party has not demanded such relief in the party's pleadings.*

*Id.* (emphasis added); *see also* W.Va. R.Civ.P. 15(b). The function of both Rules was discussed in *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 177, 381 S.E.2d 367, 376 (1989):

Prejudice to the adverse party is the paramount consideration in motions to amend. Absent a showing of prejudice to an adverse party motions to amend should be granted. . . .

. . . .

In the final analysis it is not the amount stated in the *ad damnum* clause but the actual proof of the plaintiff's damages which will control the issue. Furthermore, "[c]hallenges based on such technicalities cannot prevail under our Rules of Civil Procedure. *See,* W.Va.R.Civ. Pro., rules 54(c) and 15(b). The propriety of the verdict is tested by the evidence to support the recovery and not by the amount of the *ad damnum* clause."

*Id.* (citations and quoted authority omitted).

The *Berry* interpretation thus permits strategic use of the state civil rules as a device to prevent removal, effectively permitting a plaintiff to avoid federal court and either (1) amend his prayer for relief, or (2) simply ignore it and then request the jury to make a more substantial award once the statutory deadline for removal has passed.

Considering this potential for abuse, the Court does not believe itself bound ineluctably to grant remand simply because a plaintiff "limits" himself to a demand for recovery below the jurisdictional minimum. Accordingly, despite McCoy's attempted, unilateral circumscription of federal jurisdiction, the Court examines whether exercise of removal jurisdiction is appropriate.[3]

A related issue is worthy also of discussion, namely the extent to which a plaintiff's unilateral stipulation may impact an amount in controversy determination. The undersigned has previously permitted rather relaxed, post-removal "binding representation[s]" and stipulations to carry great weight in determining the amount in controversy. *See, e.g., Adkins v. Gibson,* 906 F.Supp. 345, 348 (S.D.W.Va.1995). *Adkins* and its progeny, however, must now yield to a more coherent, balanced approach. The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery. *See Hicks v. Herbert,* 122 F.Supp.2d 699, 701 (S.D.W.Va.2000) ("only a binding stipulation that they would not seek nor accept more than $75,000 could limit the potential recovery. Some authority additionally suggests such

---

**3.** At least one other judge in this District agrees with this approach:

After reviewing all the above cited cases, this court concurs with the reasoning . . . that there must be some leeway to inquire into the amount in controversy in cases

where the plaintiff has pled a specific sum which is below the jurisdictional minimum but final recovery is not limited to that sum. *Watterson v. GMRI, Inc.,* 14 F.Supp.2d 844, 848 (S.D.W.Va.1997) (Staker, J.).

a waiver must be truly binding on the plaintiff in state court before it will prevent removal."). The stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief. *See De Aguilar v. Boeing Company,* 47 F.3d 1404, 1412 (5th Cir.1995) ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.").

A binding pre-removal stipulation should alleviate unseemly forum gaming, which has occurred frequently in the wake of *Adkins'* relaxed approach. The requirement of a pre-removal stipulation will not prevent removal, but it will be an important consideration for a court applying the principles discussed *infra.*

### 2. Defendant's Burden to Show the Requisite Amount in Controversy

▮ The burden of establishing federal jurisdiction rests with the party seeking to litigate in federal court. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When a case has been removed, the defendant bears the burden of showing federal jurisdiction has been invoked properly. *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

▮ The next question, then, is the burden of proof to be placed upon Erie as it attempts to establish the jurisdictional minimum. Unfortunately, *Red Cab* introduced further ambiguity into this area:

It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.... [I]f, from the face of the plead-

ings, *it is apparent, to a legal certainty,* that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Red Cab,* 303 U.S. at 289, 58 S.Ct. 586 (emphasis added).

This brief statement in *Red Cab* lit a firestorm of debate regarding what proof scheme was required of a defendant to sustain removal. One commentator's observation of three main, evolving standards is typical:

Federal judges have proposed three different standards. ***First,*** the *"reverse legal certainty"* standard requires a defendant to show that it is not a legal certainty that the plaintiff would recover less than the jurisdictional amount. Stated simply, a defendant bears the burden of showing only that the plaintiff possibly could recover more than the jurisdictional amount. ***Second,*** the *"preponderance of the evidence"* standard attempts to strike a balance between a plaintiff's right to choose a state forum and a defendant's right to remove by requiring a defendant to prove the jurisdictional amount by a preponderance of the evidence. ***Third,*** the stringent *"legal certainty"* standard forces a defendant to prove to a legal certainty that the prevailing plaintiff cannot recover less than the jurisdictional amount.

Russell D. Jesse, *Pleading to Stay in State Court: Forum Control, Federal Removal Jurisdiction, and the Amount in Controversy Requirement,* 56 Wash. & Lee L.Rev. 651, 652–53 (1999); *see also* Jack E. Karns, *Removal to Federal Court and the Jurisdictional Amount in Controversy Pursuant to State Statutory Limitations on Pleading Damage Claims,* 29 Creigh-

ton L.Rev. 1091, 1094 (1996); *See, e.g.*, 14C Charles A. Wright *et al., Federal Practice & Procedure* § 3725 (3rd ed.1998) (noting "Courts have employed numerous different standards to assess the adequacy of a defendant's showing that the amount in controversy requirement is satisfied" and stating some courts use no standard at all).

To the confusion of the Bar, judges in this District have applied all three standards,[4] with the majority employing the preponderance standard. *See, e.g., Weddington v. Ford Motor Credit Co.*, 59 F.Supp.2d 578, 583 (S.D.W.Va.1999) (Hallanan, J.); *Sayre v. Potts*, 32 F.Supp.2d 881, 885 (S.D.W.Va.1999) (Goodwin, J.); *Whitney v. State Farm Mut. Auto. Ins. Co.*, No. 3:98–0241, slip op. at 3 (S.D.W.Va.

Jun. 9, 1998) (Chambers, J.); *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 936 (S.D.W.Va.1996) (Copenhaver, J.). The undersigned has not previously applied the preponderance standard. *See, e.g., Cline v. Matney*, 20 F.Supp.2d 977, 979 (S.D.W.Va.1998) (Haden, J.) (denying motion to remand because "the amount in controversy has not been established to a legal certainty to be less than the jurisdictional minimum"); *Adkins*, 906 F.Supp. at 348 (remanding case because "the Court finds and concludes the amount in controversy has been established to a legal certainty to be less than the jurisdictional minimum.").

An examination of the legal certainty and reverse legal certainty standards re-

---

**4.** This divergence of opinion is especially significant when an argument could be made our Court of Appeals chose *Red Cab*'s legal certainty approach over two decades ago. *See Wiggins v. North American Equitable Life Assur. Co.*, 644 F.2d 1014 (4th Cir.1981). *Wiggins* involved a removal from state court based on diversity of citizenship. In reversing and ordering the case remanded to state court, Judge Winter stated:

> Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith. *See McDonald v. Patton*, 240 F.2d 424 (4th Cir.1957). But, as that case stated, on the authority of *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938): [I]t has been further recognized that while good faith is a salient factor, it alone does not control; for if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction.... However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.

240 F.2d at 426. In this case, our consideration of Maryland law, which the parties concede is the law to be applied, *persuades us that plaintiff, as a matter of "legal certainty," could not recover punitive damages in this action. If this be true, it follows that*

> *at most $9,000 was the amount in controversy and the requisites for diversity jurisdiction were not satisfied.*

*Id.* at 1016–17 (emphasis added).

Upon closer inspection, *Wiggins* is not controlling here for a variety of reasons. First, many courts agree the legal certainty test is the appropriate burden where, as in *Wiggins*, plaintiff alleges a sum in excess of the jurisdictional minimum. *Weddington v. Ford Motor Credit Co.*, 59 F.Supp.2d 578, 582 (S.D.W.Va.1999) (citing cases). Unlike the plaintiff in *Wiggins*, however, McCoy alleges a range of sums anywhere between a penny and $74,999.99, purposely pleading just short of the jurisdictional amount. *See infra* note 6. Second, *Wiggins* was decided over twenty years ago and did not account for the controversy surrounding *Red Cab*. Some commentators have even concluded our Court of Appeals has yet to weigh in on the circuit split. *See* Karns, *supra* at 1106 n. 97 (stating "the United States Court of Appeals for the Fourth Circuit has not issued an opinion dealing with this question"). Third, the panel in *Wiggins* apparently deemed itself bound to the legal certainty rule earlier stated in *McDonald v. Patton*, 240 F.2d 424 (4th Cir.1957), a case quoting and following *Red Cab*. *McDonald*, however, did not involve a removal. Rather, it was a case originally filed in federal court. For all of these reasons, the Court respectfully believes *Wiggins* does not provide the rule of decision.

veals their manifest weaknesses. For example, a common criticism of the legal certainty standard is the "onerous ... burden" it places on the defendant and its failure adequately to protect against plaintiff manipulation of the state and federal fora. Wright *et al.*, *supra* § 3725. On the other end of the spectrum, the reverse legal certainty test is often derided for its permissiveness, unfairly robbing plaintiff of his forum choice.

As rightly observed by Judge Goodwin and other judges in the District, the preponderance standard falls somewhere in the middle of these two extremes. The standard has been described favorably as "a reasonable attempt to balance the defendant's interests in litigating in federal court with the plaintiff's interests in remaining in the forum of his choice." Wright *et al.*, *supra* § 3725; *see also Sayre v. Potts*, 32 F.Supp.2d 881, 886 (S.D.W.Va.1999) ("The preponderance standard is a workable compromise that falls between the restrictive legal certainty test and the lenient reverse legal certainty standard.").

The test balances fairly the competing interests identified by our Court of Appeals, namely (1) the strict construction of removal jurisdiction and the respect owed a plaintiff's choice of forum on the one hand, see, e.g., *Schlumberger Industries,*

*Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1284 (4th Cir.1994), and (2) Congress' apparent belief defendant's right to remove is at least as important as plaintiff's right to forum choice. *McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924, 927 (4th Cir.1992); *see also* Wright *et al.*, *supra* § 3725 ("the enactment of Section 1441 suggests that Congress intended ... a new regime in which either the plaintiff or the defendant can invoke the jurisdiction of the federal courts whenever a set of uniformly acceptable jurisdictional prerequisites is satisfied.").[5] At bottom, "removal procedure is intended to be 'fair to both plaintiffs and defendants alike.' "*Id.* The preponderance standard best serves this end.

Also working in favor of the preponderance standard is ease of application. The familiar standard appears frequently in everything from jury instructions to briefing and court opinions across the country. Consequently, both district judges and members of the bar are comfortable with its use. It thus comports well with our Court of Appeals' desire to resolve jurisdictional disputes quickly and efficiently:

> [C]ourts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary

**5.** Our Court of Appeals has observed many times that removal jurisdiction must be strictly construed. *See, e.g., Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148, 151 (4th Cir.1994). At least one member of the court of appeals, however, has sounded a cautionary note in an analogous area:

> Notwithstanding the [majority opinion's] nod to congressionally mandated jurisdiction, unmistakable in the prolix of [its] opinion is the view that statutes conferring jurisdiction on the federal courts should be interpreted very narrowly and, correspondingly, prudential exceptions to such congressionally conferred jurisdiction con-

strued very broadly, to the end that federal courts remain tribunals of limited jurisdiction. This is a view accepted and advanced by many on the bench, and, given the trend toward federalization generally, it is understandable and reasonable. *But, at bottom, this view is one of policy, not law itself. As a consequence, it is not a view that may permissibly influence our interpretations of statutes or, as here, our shaping of prudential exceptions.*

*Johnson v. Collins Entertainment Co., Inc.,* 199 F.3d 710, 729 (4th Cir.1999) (Luttig, J., concurring) (emphasis added).

fuss.... To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

*Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999).

The Court notes the preponderance standard is often applied selectively to those cases where no specific sum appears in the complaint.[6] The Court, however, like the unanimous panel in *De Aguilar v. Boeing Company*, 47 F.3d 1404 (5th Cir. 1995), believes the better approach is to apply the preponderance standard across the board, except where required otherwise by controlling precedent.

Accordingly, the Court today adopts and follows the cogent analyses from Judges Copenhaver, Goodwin, Chambers and Hallanan. The only modification is that the Court will apply the preponderance standard to all removal, amount-in-controversy disputes. With this ruling, the Court necessarily abandons as unworkable the overly complex standards employed in cases such as *Cline* and *Adkins*. The preponderance standard controls.

### 3. Erie's Bases for Removal

■ As Judge Goodwin observed in his excellent *Sayre* opinion, a defendant cannot satisfy its amount-in-controversy burden simply by alleging the presence of a jurisdictional sum in excess of the statutory minimum:

Rather, the defendant seeking removal *must supply evidence* to support his claim regarding the amount at issue in the case.

In addressing the propriety of federal jurisdiction in a removal action, courts base their decision on the record existing at the time the petition for removal was filed. Specifically, the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal. To calculate that amount, "the court may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue." For purposes of determining subject matter jurisdiction, the court may consider:

the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

Finally, in reaching a conclusion with regard to the amount in controversy based upon this evidence, the court "is not required to leave its common sense behind."

*Sayre*, 32 F.Supp.2d at 886–87 (emphasis added) (citations and quotations omitted).

■ Erie first asserts the amount in controversy is satisfied by McCoy's claims for unjust enrichment and disgorgement of profits. The substance of that claim is that:

[a]s a result of the relationship between the parties and the facts as stated above,

---

6. Arguably McCoy has not asserted a specific sum here. Her prayer for relief instead requests her damages, and those of each class member, be limited "to a sum not to exceed $75,000.00."

a constructive trust should be established over the monies paid by McCoy and members of the Class, including policy premiums, policy service charges and other fees charged by Defendants.

. . . .

Defendants will be unjustly enriched if they are allowed to retain such funds, and therefore a constructive trust should be imposed on all monies wrongfully obtained by Defendants.

(Compl.¶¶ 51, 53.)

The relief sought by McCoy includes "disgorgement of Defendants' ill-gotten gains and restitution to McCoy and Class Members of all monies ... acquired by means of any act or practice declared by this Court to be unlawful[.]" (*Id.* ¶ g.)

■ It is well-established that one cannot aggregate damages in a class action for purposes of reaching the jurisdictional minimum. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 302, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Glover v. Johns–Manville Corp.*, 662 F.2d 225, 231 (4th Cir.1981) ("It is clear that in a class action with diversity jurisdiction upon separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate."). Erie, however, asserts an equally well-recognized exception to *Zahn* and *Snyder*, namely that aggregation is permitted when class members "unite[ ] to enforce a single title or right in which they have a common and undivided interest." *See also Glover*, 662 F.2d at 231. Erie urges the Court to find the unjust enrichment cause of action and disgorgement request form an "integrated claim" with the required single title or right in a common and undivided interest.

The difficulty lies, however, in that each class member's claim arises from his or her own separate contractual relationship with Erie.[7] As stated in *Glover:*

> The manufacturers' claims, while common in the sense that they appear to arise under similar circumstances, fail to have the undivided interest that is a necessary predicate to aggregation. Neither is there a single title or right, *rather the claim of each manufacturer to indemnity is its alleged contract with the government. The interest of each manufacturer flows from its claimed independent contractual relationship with the United States.* Although such claims may be subject to joinder pursuant to Rule 20 of the Federal Rules of Civil Procedure, they are deemed separate and distinct for purposes of determining the amount in controversy.

*Id.* at 231 (emphasis added).

This same principle was recognized just months ago in a case identical in many respects to the instant action. In *Morrison v. Allstate Indemnity Company*, 228 F.3d 1255 (11th Cir.2000), that court of appeals examined a "putative diversity class action suit aris[ing] out of a dispute over insurance coverage for the diminished value of a vehicle after it sustains physical damage and is repaired." *Id.* at 1258. Much like the instant case, the dispute in *Morrison* centered "on whether ... th[e] policy language requires the defendants to compensate the plaintiffs for the diminished value of their vehicle after it[ ] has been repaired—the difference between the pre-accident market value of the vehicle and its market value after it has been repaired." *Id.* at 1259.

---

7. Erie itself recognizes as much. It states in part the putative class members "each seek to recover under their respective insurance policies. ..." Oppos.Br. at 15.

The *Morrison* case originated in federal court. The Eleventh Circuit raised the issue of subject matter jurisdiction *sua sponte.* The court's resulting analysis denying aggregation applies here:

> [I]t is . . . clear that the damages sought in this case may not be aggregated.
>
> As evident from the Supreme Court's decision in *Snyder,* class members generally may not aggregate their individual claims for compensatory damages to establish the requisite amount of controversy. More specifically, when multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated. *See Alvarez v. Pan American Life Ins. Co.,* 375 F.2d 992, 993–94 (5th Cir.1967); *Troup v. McCart,* 238 F.2d 289, 295–96 (5th Cir. 1956). *Because each member of the Policyholder Class, as well as each member of the Damaged Vehicle Subclass, seeks damages resulting from the defendants' alleged breach of individual insurance policies, the compensatory damages in this case may not be aggregated* to establish diversity jurisdiction.
>
> The fact that the breach of contract claim asserted on behalf of the Policyholder Class *is alternatively characterized as one for unjust enrichment does not change the result of the aggregation analysis.* In Count II of their complaint, the plaintiffs seek to compel the defendants *to disgorge the amount of the collected premiums allegedly attributable to the diminished value coverage* the defendants refuse to provide, thereby creating a common fund of recovery on behalf of the class.
>
> For amount in controversy purposes, however, it is the *nature of the right*

asserted, *not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated. See Gilman,* 104 F.3d at 1427 (explaining cogently the difference between a common fund permitting aggregation and the common fund that is usually generated in any class action); *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977). The members of the Policyholder Class are asserting rights arising from their individual insurance policies, and if successful, they will recover the amount of excessive premiums each paid under his own policy. The fact that this recovery may be obtained under an equitable theory of unjust enrichment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest.

*Id.* at 1263–64 (emphasis added).

Based on *Glover* and *Morrison,* the class members' damage claims, whether for unjust enrichment, disgorgement, or otherwise, may not be aggregated. The class members are asserting rights arising from their individual insurance policies and stand to recover only the amount of excessive premiums each paid under his or her own policy.[8]

█ Undaunted, Erie asserts McCoy's request for injunctive relief satisfies the amount in controversy requirement. That request seeks:

> [D]eclaratory relief in the form of a judgment declaring that [Erie] must disclose and pay to their West Virginia policyholders the losses that they sustain as a result of the DMV that exists when their vehicles are structurally damaged and [Erie] elect[s] the repair

---

**8.** It likewise does not appear either McCoy or any other class members' individual recovery from a disgorgement remedy would raise their individual amount in controversy above the $75,000.00 minimum.

option[; and] [I]njunctive relief enjoining [Erie] from calculating losses without including DMV....

Compl. ¶¶ 36–37. McCoy also seeks establishment of "a claims administration process for" herself and the class once liability has been determined. *Id.* ¶ c.

The Supreme Court has held "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the *value* of the object of the litigation." *See, e.g., Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (emphasis added). This open-ended characterization has spawned another split of authority, which developed concerning the "value" to whom, plaintiff or defendant.

Long in advance of the present, increasing trend, our Court of Appeals adopted the either-viewpoint rule, concluding the value of injunctive relief is properly judged from the viewpoint of either party. *See, e.g., Government Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964) ("the amount in controversy is the pecuniary result to either party which that judgment would produce" and explicitly referencing its use of "[t]he test of 'value to either party' "); Brittain Shaw McInnis, *The $75,000.01 Question: What Is the Value of Injunctive Relief?,* 6 Geo. Mason L.Rev. 1013, 1016, 1022 n. 55 (1998) (stating "The First, Fourth, Seventh, Tenth and D.C. Circuits follow the either viewpoint rule."); 14 B Charles A. Wright, *supra* § 3703 n. 22 (same).[9]

According to one commentator:

Under this flexible approach, the amount in controversy can be satisfied by demonstrating that the injunctive relief would require the defendant to alter his method of doing business in such a manner that would cost at least the statutory minimum.

McInnis, *supra* at 1016; *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 5.3.4 (3rd ed. 1999) ("This rule makes the most sense, because the amount in controversy in a lawsuit exceeds $75,000.00 if either the plaintiff or the defendant will have to pay that amount.").[10]

9. There is an interesting historical footnote to *Lally.* Had the case been argued a few years earlier, the result may have been quite different. The Honorable Armistead M. Dobie, former dean of the University of Virginia School of Law who departed from the court of appeals not long in advance of *Lally,* is credited as follows:

> Armistead Dobie ... first suggested the "plaintiff-viewpoint" approach to determining the amount in controversy in an article for the *Harvard Law Review.* Dobie perceived great confusion amongst federal courts regarding the jurisdictional amount requirement.... Dobie argued that his position, "if consistently and bravely followed, will ... serve materially to lighten the labors of the courts in their efforts to determine what is (and what is not) the amount in controversy in the vast number of cases that are daily brought before them."

Evan A. Creutz, *Two Sides to Every Story: Measuring the Jurisdictional Amount in Federal Courts,* 68 Fordham L.Rev. 1719, 1727 (2000) (citing Armistead M. Dobie, *Jurisdictional Amount in the United States District Court,* 38 Harv.L.Rev. 733 (1925)).

In fact, at least one district court in this circuit recently observed Judge Dobie's viewpoint was nearly adopted by our court of appeals:

> [O]ne panel of the Fourth Circuit, which included Judge Dobie, made the statement that "[i]t is well settled that the measure of jurisdiction in a suit for injunction is the value to plaintiff of the right which he seeks to protect." *Purcell v. Summers,* 126 F.2d 390, 394 (4th Cir.), *cert. denied,* 317 U.S. 640, 63 S.Ct. 32, 87 L.Ed. 516 (1942). Of course, as recounted above, the state of the law in this area since 1942 has been anything but settled. More importantly, the statement in *Purcell* is not binding because it is dicta.

*Hoffman v. Vulcan Materials Co.,* 19 F.Supp.2d 475, 481 (M.D.N.C.1998).

In satisfaction of its burden, Erie offers the declaration of James Brown, the assistant vice president and manager of the Material Damage Department of Erie Insurance Company, speaking on behalf of all three corporate entities:

8. The cost to Erie of complying with the declaratory and injunctive relief sought by the Plaintiff would substantially exceed $75,000, exclusive of interest and costs, even in the first year of required prospective compliance. . . .

b. Moreover, and separate from above, the administrative cost of compliance with the requested declaratory and injunctive relief would substantially exceed $75,000 in the first year. For example:

i. Erie would have to hire two or more additional appraisers in West Virginia for the purpose of adjusting the diminished value aspect of first-party claims. Each appraiser would have to be paid a salary and benefits, and would have to be provided with a vehicle for use in extensive company-related travel. The total cost of just even two additional appraisers—including salary, benefits and vehicle—would significantly exceed $75,000, if it were even possible to objectively measure diminished value.

ii. Further, the related cost of developing procedures and systems with regard to such first-party claims for diminished market value would also be substantial, and would also certainly exceed $75,000 in combination with even one additional appraiser.

Decl. of James Brown ¶ 8.[11]

According to *Lally*, "the amount in controversy is the pecuniary result to either party which that judgment would produce[.]" [12] Based on the Brown affidavit, Erie has established by a preponderance of the evidence that the pecuniary result it would suffer as a result of a judgment in McCoy's favor would well exceed the jurisdictional minimum.[13] Accordingly, the

---

10. Interestingly, the either-viewpoint rule also greatly diminishes the effect of McCoy's attempt in her complaint to limit the amount in controversy.

11. It is appropriate to consider the affidavit under existing District precedent. *See, e.g., White v. J.C. Penney Life Ins. Co.,* 861 F.Supp. 25, 27 (S.D.W.Va.1994) ("[T]he court may consider, in addition to plaintiff's Complaint, the removal petition and an affidavit filed by the defendant, both of which assert that the $50,000 threshold amount is present").

12. Some jurisdictions applying the either-viewpoint rule suggest nonetheless the plaintiff-viewpoint rule should apply when a class action is involved. *See also McIntire v. Ford Motor Co.,* 142 F.Supp.2d 911 (S.D.Ohio 2001). While the Court of Appeals might carve out such an exception to *Lally,* this Court does not believe itself empowered to do so.

13. The exercise of jurisdiction here comports with the non-aggregation rule laid down in *Zahn* and *Snyder.* While the Court, consistent with *Lally,* has viewed the amount in controversy from Erie's perspective, at least one of the three corporate Defendants was required to independently satisfy the jurisdictional minimum. *See* McInnis, *supra* at 1045 ("If the either viewpoint rule is to be applied consistently with [the rule of non-aggregation], the proper corollary rule would be that multiple defendants' potential burdens cannot be added together to meet the jurisdictional amount."). A permissible reading of the Brown affidavit reveals at least one of the diverse Defendants satisfies the jurisdictional minimum. The affidavit, however, is not of pristine clarity on this point. It leaves some doubt as to whether the administrative cost of compliance would exceed $75,000.00 for (1) all of the corporate Defendants separately, (2) at least one of the corporate Defendants, or (3) only as to all three corporate Defendants in the aggregate. Jurisdiction over the entire case is obviously appropriate under the first option. It is likewise appropriate, taken with

Court **FINDS** and **CONCLUDES** the exercise of removal jurisdiction is appropriate. McCoy's motion to remand is **DENIED.**[14]

### B. Motion to Dismiss

Erie moves to dismiss, asserting: (1) the Policy language applicable to the underlying contract claim does not permit recovery for DMV; (2) McCoy may not allege a breach of the obligation of good faith and fair dealing where the underlying contract claim must be dismissed; and, (3) McCoy may not recover on an unjust enrichment theory when she also seeks to recover under a written agreement.

On many occasions, the Court has observed that movants under *Rule* 12(b)(6), *Federal Rules of Civil Procedure*, face a difficult and exacting burden. *See Guy F. Atkinson Const. v. Ohio Mun. Elec. Gen-* *eration Agency Joint Venture 5*, 943 F.Supp. 626, 630 (S.D.W.Va.1996); *McClenathan v. Rhone-Poulenc, Inc.*, 926 F.Supp. 1272, 1274 (S.D.W.Va.1996).

Having considered the parties' thorough briefing, the Court concludes Erie has not made the showing necessary for dismissal at this early juncture. There is a growing split of authority on the issue presented. The Court believes the correct application of the law in this unsettled area will be facilitated by further refinements of the issues and a more complete factual record developed through discovery. That discovery may include background on the intent behind the subject Policy provisions and clarification as to whether each putative class member is actually covered by similar or identical Policy language. Pending further factual and legal development, then, the Court **DENIES** Erie's motion.[15]

---

28 U.S.C. § 1367, for the second option. Only the third choice would result in a lack of jurisdiction. On a matter of this importance, Erie is **ORDERED** to supplement the affidavit no later than June 25, 2001 to clarify which one or more of the corporate Defendants individually satisfies the jurisdictional amount.

**14.** One lingering issue merits resolution. Some courts have required that the amount in controversy be satisfied even after the financial burden to *the defendant* is apportioned to each plaintiff. *See, e.g., Crosby v. America Online, Inc.*, 967 F.Supp. 257, 265 (N.D.Ohio 1997). That rule, however, makes little sense in this context:

> Thus, courts misunderstand the problem where they ask whether it is proper to allocate a defendant's burden amongst numerous plaintiffs. Moreover, courts should be justified in rejecting a cross-allocation rule because of the opportunities it creates for plaintiffs' strategic gaming. Under an approach that pro-rates to each class member the value of the injunctive relief to a single defendant, plaintiffs can always defeat jurisdiction by simply adding more plaintiffs to the case; by increasing the denominator of the jurisdictional equation, they necessarily create a smaller dividend.

McInnis, *supra* at 1045–46. Again, the Court has heeded *Zahn* and *Snyder* based on the finding the administrative cost of the injunction to at least one of the corporate Defendants running in favor of even McCoy herself exceeds the jurisdictional amount. *See In re Microsoft Corp. Antitrust Litigation*, 127 F.Supp.2d 702, 719 (D.Md.2001) ("[I]n a case such as this where an injunction in favor of a single plaintiff—compliance with which would cost the defendant in excess of the jurisdictional amount—would provide the same benefit to all other plaintiffs, the test yields a result consonant with the purpose of the common and undivided interest exception."). Our Court of Appeals may resolve soon many of the complex subject matter jurisdiction issues presented here. The Honorable J. Frederick Motz certified for interlocutory appeal his decision on the motions to remand in *In re Microsoft*. The Court of Appeals is currently considering the petition for permission to appeal the denial of the motion to remand. *See Davenport v. Microsoft Corp.*, No. 01–0650 (4th Cir. Feb. 26, 2001).

**15.** The Court's denial of the motion is, of course, without prejudice to Erie's ability to raise anew its arguments at the summary judgment stage of the case.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to post a copy on the Court's website at . http://www.wvsd.uscourts.gov.