MOSES AUTOMOTIVE, INC., dba
Moses Honda, a West Virginia
corporation, Plaintiff,

v.

AMERICAN HONDA MOTOR COMPANY, INC., a California corporation, Defendant.

Civil Action No. 3:07–0361.

United States District Court,
S.D. West Virginia,
Huntington Division.

Aug. 2, 2007.

David A. Barnette, Laurie K. Miller, Jackson Kelly, Charleston, WV, for Plaintiff.

Mychal Sommer Schulz, Nicholas S. Johnson, Dinsmore & Shohl, Charleston, WV, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

ROBERT C. CHAMBERS, District Judge.

Pending before the Court are Plaintiff Moses Automotive, Inc.'s ("Moses") Motion to Remand and Defendant American Honda Motor Company, Inc's ("American Honda") Motion to Dismiss and for Summary Judgment. Moses seeks remand arguing the amount in controversy is not satisfied in this dispute. American Honda asserts the case should be dismissed because Moses does not have standing to challenge American Honda's decision to establish the new Honda dealership in Hurricane, WV. The Motion to Remand is **DENIED.** The injunction sought by Plaintiff would surely cause a loss of over $75,000 for American Honda and, it appears equally clear, Moses stands to lose at least that amount if the injunction is denied. The Motion to Dismiss is **GRANTED** because Moses lacks the standing to seek an injunction against American Honda. The case is therefore **DISMISSED.**

### Background [1]

Moses Honda and Raines Honda are two automobile dealerships in West Virginia.

---

1. The Court will accept Plaintiff's allegations as true for the purpose of this Order on the Motion to Dismiss. *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct.

1848, 48 L.Ed.2d 338 (1976) ("Since we are reviewing a dismissal on the pleadings, we

Raines Honda is located in the "South Charleston"[2] area and Moses Honda is located in the Barboursville, WV area. Both dealerships sell new Honda vehicles. American Honda is in the business of distributing Honda vehicles. On behalf of Moses Honda, Barbara Moses Atkins (the "Dealer") signed the Automobile Dealer Sales and Service Agreement (the "Agreement") with American Honda on April 5, 2006. (Summ. J. Mot. Ex. 1A, 35.) The Agreement gives the Dealer "the nonexclusive right to sell and service Honda Products at the Authorized Location." *Id.* at 1, 4. The Agreement defines the Authorized Location as "the location(s) approved by American Honda for the purpose of conducting Dealership Operations, as set forth in Authorized Location Attachment." *Id.* at 32. Further, an enumerated ground for termination of the Agreement by American Honda is the "relocation of Dealership Operations or any aspect of Dealership Operations to a new location ... whether such relocation or additional location is permanent, temporary or is within or outside Dealer's Area of Statistical Analysis, without the prior written approval of American Honda." *Id.* at 22–23. The Authorized Location Attachment stated the Moses dealership will be located on Route 60 in Barboursville, WV, with specific street addresses listed. (Summ. J. Mot. Ex. 1A.)

On May 24, 2006 American Honda sent a letter ("May 24 letter") to Lester Raines at Raines Honda and Barbara Moses Atkins, Dealer/Manager of Moses Honda, stating that it planned on opening a new dealership in the South Charleston area. (Summ. J. Mot. Exs. 1C–D.) American Honda had not determined an exact location at that time. The letter stated that American Honda planned on having the new dealership operational by December 2007. *Id.* On July 19, 2006, Lester Raines sent notice to American Honda stating that he objected to the establishment of a new dealership in the area. (Resp. Ex. B.) Raines also filed a Complaint for a Declaratory Judgment in the Circuit Court of Kanawha County on July 20, 2006. The Complaint was filed pursuant to W. Va. Code § 17A–6A–12(3) which provides that an existing dealer may object to the establishment of a new dealership within its relevant market area. Lester Raines claimed the May 24 letter was notice of a new dealership within the relevant market, as required under W. Va. Code § 17A–6A–12(2).

> Before a manufacturer or distributor enters into a dealer agreement establishing or relocating a new motor vehicle dealer within a relevant market area where the same line-make is represented, the manufacturer or distributor shall give written notice to each new motor vehicle dealer of the same line-make in the relevant market area of its intention to establish an additional dealer or to relocate an existing dealer within that relevant market area.

*W. Va. Code § 17A–6A–12(2).* Moses also objected by letter to American Honda's establishment of the new dealership in the South Charleston area. American Honda responded explaining that the May 24 letter was merely a courtesy, and not notice under the West Virginia statutes; since no location had been chosen, American Honda

---

must, of course, take as true the material facts alleged in petitioner's amended complaint.").

2. Although termed "South Charleston" it contains a larger area including the entire Charleston metro area. The area also includes "all census tracts that are closer to Lester Raines Honda than to any other Honda dealer." (Green Decl. 3.) The South Charleston area does not include Barboursville, however, because of the expansive description of the South Charleston area, it is near that market area.

denied any duty to provide notice to the dealers unless the new location is within the relevant market. (Resp. Ex. C.) The *Raines* lawsuit was removed to federal court, and Chief Judge Faber remanded the action, finding the amount in controversy insufficient since a location had not been determined at the time of the suit. (Remand Mot. Ex. A.) Once remanded, Circuit Judge King dismissed the action, finding the May 24 letter was not statutory notice and Raines lacked standing to maintain the suit. (Resp. Ex. E.) The *Raines* case was dismissed on March 26, 2007. The *Raines* plaintiff has appealed the dismissal to the Supreme Court of Appeals of West Virginia.

On January 26, 2007, American Honda sent a letter to Lester Raines' attorney stating it had determined the location of the new Honda Dealership, on I–64 in Hurricane, WV and the location was 16.3 air-miles from his dealership. (Resp. Ex. D.) The new location is 15.9 miles from the Moses dealership. (Complaint ¶ 8; Summ. J. Mot. Ex. 1 E.) On March 2, 2007 Richard Colliver for American Honda and Jackie and Rebecca Mitchell (the "Mitchells") signed a Letter of Intent to establish the new dealership in Hurricane, WV. (Summ. J. Mot. Ex. 1F.)

At the beginning of 2007, Moses was contemplating moving the existing dealership approximately 3 miles from the current location. Although Moses interprets W. Va.Code § 17A–6A–12(1) as allowing the move of the dealership without the approval of the manufacturer or same line-make dealers, on March 9, 2007 and April 3, 2007 pursuant to the Agreement, Barbara Moses Atkins notified American Honda of her intent to move locations. (Summ. J. Mot. Ex. 1G–I.) This move would place the Moses dealership within the fifteen air-mile radius of the Mitchells' proposed dealership. (Summ. J. Mot. Ex. 1I.) Moses sought notification under the West Virginia statute of American Honda's

intention to establish a new dealership within the fifteen mile radius of the new location proposed by Moses. *Id.* American Honda did not send notification and explained, in correspondence dated April 18, 2007, the notification requirement was based on the relevant market area of the "dealer's *existing* location, not to any location the dealer proposes." (Summ. J. Mot. Ex. 1J.) On May 14, 2007 American Honda notified Moses of its denial of the proposed move stating the new location was not as convenient as the original Moses location, and not optimally located. (Resp. Ex. I.)

At the same time the West Virginia Legislature was considering a bill to increase the air-miles radius around an existing dealership when measuring the relevant market. Mr. Barnette, the attorney representing Mr. Raines in his litigation, testified at the Judiciary Committee Hearings regarding the proposed changes and how the changes would affect the pending lawsuit. (Summ. J. Mot. Ex. 2C, 127.) The committee members asked specifically about the effect of the legislation on the litigation surrounding the proposed Hurricane dealership. Mr. Barnette stated that the new language would not affect the litigation. *Id.* at 127, 132, 135, 139, 141. On March 10, 2007 the Legislature enacted the bill and expanded the radius from fifteen to twenty miles. (Resp. Ex. H.) The language of the bill provided that it did not extend the new measurement to dealerships in the process of being established where a signed agreement, such as a Letter of Intent, was executed before March 10. *Id.*

On May 3, 2007 Moses filed a Complaint in the Circuit Court of Cabell County for a declaratory judgment against American Honda. Moses complained that American Honda failed to give formal notice of the establishment of the new dealership in proximity to Moses' proposed new site.

Moses seeks a declaratory judgment demanding American Honda give notice, provide Moses with the March 2 Letter of Intent, and a declaration by the Court that Moses' proposed move takes precedent over American Honda's establishment of a new dealership. Moses is seeking costs and attorney's fees. (Complaint ¶¶ 10–19.)

## Discussion

### I. Motion to Remand:

■ Complete diversity of the parties is not contested. Therefore, the Court need only determine whether the amount in controversy exceeds the $75,000 threshold required to sustain a diversity action in federal court. See 28 U.S.C. §§ 1332 and 1441(a). The leading case on the determination of amount in controversy for purposes of federal jurisdiction is *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In that case, the United States Supreme Court held that when the amount in controversy is challenged, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify the dismissal." *Id.* at 289, 58 S.Ct. 586. In a case where the claims were removed to federal court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court." *Id.* at 290, 58 S.Ct. 586; *Evans v. CDX Services, LLC*, 2007 WL 30312 *5 (S.D.W.Va. Jan. 4, 2007).

■ In a removal action, the defendant bears the burden of proving, by a preponderance of the evidence, that the plaintiff's claims exceed the jurisdictional amount. *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 489 (S.D.W.Va.2001) ("a defendant cannot satisfy its amount-in-controversy burden simply by alleging the presence of a jurisdictional sum in excess of the statutory minimum"); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 23–24 (S.D.W.Va.1994). The amount in controversy can be measured by either party's loss. *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) ("the amount in controversy is the pecuniary result to either party which that judgment would produce"). The amount is measured in terms of the financial results of the litigation. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ In challenging the Court's jurisdiction Plaintiff relies on the decision by Chief Judge Faber in the *Raines* case. *Raines Imports, Inc. v. American Honda Motor Co.*, No. 2:06–0650 (S.D.W.Va. Dec. 12, 2007). Although Plaintiff argues Chief Judge Faber's reasoning applies to this case, there are factual differences in the two cases that are pivotal to the decision by this Court. In *Raines*, Chief Judge Faber made his determination based on the May 24 letter, before a site had been chosen as the new location for the Honda dealership. American Honda's basis for removal was that it would suffer a loss of more than $75,000 if Raines succeeded in obtaining the declaratory judgment and precluding establishment of the new dealership. However, American Honda failed to provide any supporting financial analysis. Without a proposed location, since it was unclear whether it would be within the fifteen mile radius necessary to give Raines standing to challenge the dealership, the possible damages were too speculative. Chief Judge Faber explained that "[b]ecause [American Honda] has not determined a location and identity of the proposed new dealership, it cannot argue that it stands to lose significant assets already invested in a new dealership located inside the relevant market area." (Re-

mand Mot. Ex. A, 5.) Also, noted the court, defendant provided "no evidence from which to make its valuation." *Id* at 6. Chief Judge Faber found possible harm to plaintiff to be equally unclear since "the court is unable to determine from the record what pecuniary harm may result to plaintiff from these alternate scenarios." *Id.*

The case before this Court is different. Even with Moses' claim, addressed below, that its proposed new location defines the relevant market area, this case does not rest on the speculation which troubled Chief Judge Faber. What is before this Court is detailed information about the financial projections of American Honda related to the new dealership. American Honda's calculations address possible economic harm to Moses if the new dealership is established as well as information of American Honda's projected gains. American Honda has provided detailed information regarding the gross sales and profits by Moses in 2005 and 2006, including the number of vehicles and amount Moses receives per vehicle sold. Although American Honda considers the exact gross profits per unit to be confidential, proprietary information, Mr. Green, Manager of Market Planning, states that American Honda's average per vehicle gross profit is $750. (Green Decl. 8.) If only 101 new vehicles could be sold by the Mitchells' dealership, American Honda's loss would meet the amount in controversy.

The possible financial impact to American Honda if it is prevented from opening a new dealership is also demonstrated by evidence of the national market percentage of vehicle sales compared to the local "South Charleston" market. The South Charleston Honda market has decreased as Toyota has increased in the last five years and this pattern is not consistent with the sales of the two brands in this area of the country. *Id.* at 3. The Barboursville's market is also significantly below the market levels. *Id.* at 4. Mr. Green states "categorically that American Honda is likely to lose hundreds and thousands of dollars in gross profits, if it is prevented from opening the new dealership." (Green Decl. 2.) Mr. Green provides a "gross loss" analysis to determine the lost opportunity in the ordinary course of business. *Id.* at 4–7.[3] Under this analysis, in 2006 Honda's national average sales penetration was 18.24% compared to the South Charleston market sales penetration which was 10.17%. *Id.* at 6. If Honda reached the national average for each model, an additional 606 new Honda models would be sold. *Id.* at 6–7. Therefore the "loss" in the South Charleston market was 606. Based on evidence of profit per vehicle provided by Mr. Green, the Mitchells' dealership would need to sell less than 20% of vehicles in the "loss" amount for American Honda reach the $75,000 threshold in one year.

American Honda has provided a substantial amount of information to satisfy the amount in controversy. Even if Moses does not suffer a decrease in sales if the new dealer is established, it is clear American Honda could lose over $75,000 if it is prevented from establishing the new dealership. The amount in controversy exceeds the threshold.

In response to Defendant's Motion to Dismiss, Moses also argues that the Court does not have jurisdiction because the

---

**3.** "A 'loss' analysis compares the number of Honda vehicles of each model sold in each census tract in a given market with the number of sales that would have been made if Honda's sales penetration in each vehicle segment in those tracts were at national average." (Green Decl. 6.) The "gross loss" analysis relies on data from Urban Science Applications, Inc. and R.L. Polk, Inc. from the 2006 calendar year.

West Virginia statute specifically grants jurisdiction to the state court. The West Virginia statute grants an existing dealership the right to sue in state circuit court if the proposed dealership is within the relevant area. Plaintiff relies on the language that directs "a new motor vehicle dealer of the same line-make within the affected relevant market area may bring a declaratory judgment action in the circuit court for the county in which the new motor vehicle dealer is located." *W. Va.Code § 17A–6A–12*. The legislature also indicates that the case should be addressed quickly, "[a]n action brought pursuant to this section shall be given precedence over all other civil matters on the court's docket." *Id.* There is nothing in the statute that demonstrates the Legislature intended to prevent federal court diversity jurisdiction. The language provides a dealer the opportunity to go to court if the dealer is within the relevant market area. As addressed below, Moses does not have standing to bring suit under this statute because it is not within the relevant market area. This Court has jurisdiction based on the diversity of the parties and the amount in controversy. The Motion for Remand is **DENIED**.

## II. Motion to Dismiss and for Summary Judgment: [4]

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted. A Rule 12(b)(6) motion tests the sufficiency of the pleading. It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (cita-

tion omitted). In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id.* Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir.2005). The motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted. *See McNair v. Lend Lease Trucks*, 95 F.3d 325, 328 (4th Cir.1996); *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989).

Because the parties have submitted evidence beyond the pleadings the Motion is also considered for summary judgment. *Fed.R.Civ.P. 12(b)* (stating that if the motion to dismiss is for failure to state a claim in the pleading and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

4. The parties have submitted exhibits and affidavits for the Court to consider. It is clear from these exhibits the central facts are not in dispute. The existing location of Moses is not in dispute, the location of the proposed new

dealership is not in dispute, and the distance between the two is not in dispute. The Court considered all evidence submitted and bases the decision on the undisputed facts presented.

U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendant seeks dismissal based on Plaintiff's lack of standing under W. Va. Code § 17A–6A–12 to seek an injunction, since the new dealership site is not within a fifteen mile radius of Moses' dealership. Plaintiff objects to the Motion on a number of grounds. First, Plaintiff argues that the West Virginia Legislature changed the radius at issue to twenty miles from fifteen miles, and Plaintiff's dealership is clearly within the twenty mile radius. Next, Plaintiff contends that even if the fifteen mile radius were to apply, Moses intended to move its dealership three miles, which would put it within the fifteen mile radius. Lastly, Plaintiff states American Honda is in violation of the statute at issue, since it continued to establish the new location even though the suits in *Raines* and this case have not been resolved. Plaintiff's arguments have no merit and Plaintiff lacks standing to seek the injunction.

### A.   Amendment to Air–Mile Radius Does Not Apply:

The first issue for the Court to consider is whether Moses has standing to challenge the establishment of the new Honda dealership. At issue is a West Virginia statute that allows an existing motor vehicle dealer to challenge establishment of a new dealership within the relevant market of the existing dealer. *W. Va.Code § 17A–6A–12* ("a new motor vehicle dealer of the same line-make within the affected relevant market area may bring a declaratory judgment action . . . to determine whether good cause exists for the establishing or relocating of the proposed new motor vehicle dealer."). The relevant market was defined as a fifteen air-mile radius around the existing same line-make new motor dealership. On March 10, 2007, the Legislature extended the radius to "a twenty air-mile radius around an existing same line-make new motor vehicle

dealership." *W. Va.Code § 17A–6A–3.* This change did not affect the establishment of a proposed new motor vehicle dealership,

> to which a manufacturer or distributor and the proposed new motor vehicle dealer have executed on or before the effective date of this statute a written agreement, including a letter of intent, performance agreement or commitment letter, concerning the establishment of the proposed new motor vehicle dealership.

*Id.* Therefore, the determination of whether the fifteen mile radius or twenty mile radius applies depends on whether there was a written agreement between American Honda and the new dealers, Jackie and Rebecca Mitchell, executed before March 10, 2007. As Defendant has presented, a Letter of Intent was executed on March 2, 2007. (Sum. J. Mot. Ex. 1F.) Attached to and incorporated in the Letter of Intent as an exhibit is a detailed description of the new location. *Id.* Plaintiff challenged whether the Letter of Intent was signed on March 2, 2007, claiming the signature date "is really only an assertion by American Honda and Moses is being asked to simply take it at face value." (Resp. 4.) Defendant responds with three notarized affidavits attesting that those signatures were made on March 2, 2007. (Reply Exs. A–C.) This is more than just an assertion that the Court must take at face value; there is uncontradicted evidence that this document was executed on March 2, 2007. The Court is satisfied that the Letter of Intent was signed on March 2, 2007, prior to the new law and therefore the fifteen air-mile radius applies. As Moses' current location is outside the fifteen mile radius, Plaintiff lacks standing to challenge the establishment of the new dealership.

### B. Moses' Proposed Move Does Not Determine Standing:

■ There has been no valid assertion that the new dealership location was within a fifteen mile radius of Moses' existing dealership. Based on Plaintiff's proposed move, which would place Moses within the fifteen mile radius, Plaintiff pursues two more arguments to retain standing. First, Plaintiff argues that the statute grants Moses the right to move without permission of the distributor, American Honda. Next, Moses argues that the fifteen mile radius should be measured from the proposed location, not the current location of Moses' dealership. Neither of these arguments has merit.

Plaintiff states that it was planning to move the dealership approximately three miles from its existing location and that move would place it within the fifteen mile radius. Moses apparently contacted American Honda on March 9, 2007 and April 3, 2007 to state its intent to move. Moses argues that American Honda was under a statutory duty at that time to notify Moses of the new location since it was within the fifteen mile radius of the future location of the dealership. Moses also argues that this planned move also gives it the standing to challenge the establishment of the new dealership. On May 14, 2007, American Honda sent a letter stating it would not grant Moses permission to move its dealership to the new location.

American Honda rejected Moses' request to move its location and Moses does not have authority to move without American Honda's approval. The Agreement signed by Barbara Moses Atkins clearly applies only to the specific location agreed upon by American Honda and allows for termination of the Agreement by American Honda if the Dealer relocates without the permission of American Honda. (Summ. J. Mot. Ex. 1A, 1, 4, 22–23.) The Agreement governs the move and without American Honda's approval of the relocation any move would allow for termination of the Agreement. Moses does not have the right to move the location under the Agreement.

Moses argues that the Legislature determined that the dealer may move without notice, agreement or permission of the manufacturer. Moses relies on the language defining relocation:

> As used in this section, "relocate" and "relocation" do not include the relocation of a new motor vehicle dealer within four miles of its established place of business or an existing new motor vehicle dealer sells or transfers the dealership to a new owner and the successor new motor vehicle dealership owner relocates to a location within four miles of the seller's last open new motor vehicle dealership location. The relocation of a new motor vehicle dealer to a site within the area of sales responsibility assigned to that dealer by the manufacturing branch or distributor may not be within six air miles of another dealer of the same line-make.

W. Va. Code § 17A–6A–12(1). This definition does not advance Moses' broad application of the law. The statute does not control the relationship between the dealer and the manufacturer when it defines the term "relocation" nor does it control the specific terms agreed upon by the parties in the Agreement. Moses was required, under the terms of the Agreement, to notify American Honda and seek its approval. There has been no statutory cancellation of this provision in the Agreement.

American Honda did not grant permission for Moses to relocate. Moses does not have standing to seek the injunction since the only applicable measurement is from Moses' current location which is over fifteen miles from the new dealership.

## C. American Honda's Actions Are Not in Violation of the Statute:

Moses argues that American Honda was in violation of the West Virginia statute by proceeding to establish the new dealership after the suits were filed. "Once an action has been filed, the manufacturer or distributor may not establish or relocate the proposed new motor vehicle dealer until the circuit court has rendered a decision on the matter." *W. Va.Code § 17A–6A–12(3)*. However, this Court and the Circuit Court have both found that neither Raines nor Moses had standing to file the suits. There was no required statutory notice that would precipitate the action for an injunction. American Honda was not in violation of the statute since the statute would only apply if the new dealership was located within Moses' or Raines' relevant market.

### Conclusion

For the aforementioned reasons, the Court has jurisdiction in this case and Plaintiff does not have standing to seek an injunction against American Honda to cease the establishment of the new dealership. Plaintiff's Motion to Remand is **DENIED** and Defendant's Motion to Dismiss and for Summary Judgment is **GRANTED**. The case is **DISMISSED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.